WENDELL B. WILLARD & others *vs.* HOWARD D. STONE.

Worcester.    September 21, 1925. — November 23, 1925.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Easement,* To use of spring, Abandonment.    *Water Rights.*    *Deed,* Construction.    *Contract,* Consideration.

A deed in 1849 by an owner of farming land upon which there were springs granted to the owner of land adjoining "the right to take & use the water from a point near or below a certain spring or springs situated on the farm on which I now live & about forty rods west of my buildings and about ten rods north of said . . . [grantee's] land and also the right to dig the necessary trenches and put down pipes suitable to carry the water to said . . . [grantee's] buildings: Also the right to take up and repair said pipes or put down new ones when it may be necessary." In the region described were two springs.    The grantee constructed a reservoir with which he connected at first only one of the springs. Fifty-eight years later the grantee's successor in title, under an oral agreement that he would do some filling and draining about the springs, which he did not perform, connected the reservoir with the second spring also.    About sixteen years thereafter, the successor in title to the grantor made a connection with the second spring and drew the water down so that the grantee's successor did not have sufficient water for his reasonable needs, and a suit was brought to enjoin such diversion. *Held,* that

(1) The water rights granted by the deed by implication and as incidental thereto included the right to perform such acts as were reasonably necessary to make the grant effective;

(2) From the deed and the conduct of the parties, it was apparent that the plaintiff had the primary right to take the waters of the second spring as well as of the first spring for necessary and reasonable purposes;

(3) There was nothing to show an abandonment by the plaintiff of his rights; such abandonment could not be found unless it clearly appeared that it was intended by the owner;

(4) The oral agreement by the plaintiff, entered into when he made a connection with the second spring, gave him nothing beyond the rights which he already had, and his failure to carry out that agreement did not preclude him from insisting upon his primary right to the waters of that spring;

(5) Since the taking of waters of the second spring was not an extension or an enlargement of the right given by the deed, the use during the first fifty-eight years of the waters of the first spring only did not preclude the plaintiff from availing himself of his right to the primary use of the second spring when he exercised it;

(6) The description in the deed as to the locations of the springs was not uncertain; and therefore the circumstances did not call for the application of the familiar rule of construction that, where a right of way,

or other easement, is granted by deed without fixed and definite limits, the practical location and use of such way or easement by the grantee under his deed, acquiesced in by the grantor at the time of the grant and for a long time subsequent thereto, operate as an assignment of the right and are to be deemed to be that which was intended to be conveyed by the deed, and are the same in legal effect as if they had been fully described in the terms of the grant;

(7) A decree enjoining the defendant from interfering with the primary right of the plaintiff to use the water of the second spring as well as the water of the first spring was proper.

BILL IN EQUITY, filed in the Superior Court for the county of Worcester on January 10, 1924, to establish and declare the plaintiffs' right to draw water from the defendant's premises by means of pipes running from two springs to a reservoir and from the reservoir to buildings on the plaintiffs' land; to enjoin the defendant from obstructing, interfering with, diverting, or in any manner preventing the plaintiffs from so drawing water, and for damages due to unlawful obstructions and diversions of the water by the defendant.

In the Superior Court, the suit was referred to a master. Material findings by the master are described in the opinion.

A portion of a plan annexed to the master's report and referred to in the opinion is shown on the opposite page.

The suit was heard upon the master's report by *Burns*, J., by whose order there were entered an interlocutory decree overruling exceptions to and confirming the master's report, and a final decree that the plaintiffs were entitled to take all the water issuing from the springs on the defendant's premises referred to in the opinion "as springs A and B (which springs were in existence in 1849 at the time of the grant), and to conduct said water to said Willard premises, so far as the water issuing from said springs was and now is in good faith required for use on said Willard premises for all domestic and farming purposes, in the same manner and to the same extent that the same was used and enjoyed by William B. Willard aforesaid, and has since been used and enjoyed by his successors in title"; that "the connection of spring B made by the defendant with the Stone reservoir . . . in 1923, by a pipe laid at the same level of outlet as the outlet pipe to the Willard reservoir . . . constitutes a wrongful diversion of waters which previously passed by the point referred to in said deed, and were granted thereby, and constitutes a continuing disturbance of the easement, now existing in favor of the plaintiffs;" and enjoining the defendant "from maintaining the outlet pipe connecting said spring B with the Stone reservoir . . . at the level of the plaintiffs' outlet pipe, and from conducting or conveying waters from said spring B except in subordination to and in recognition of the plaintiffs' primary and prior right to the first use thereof, for conveyance to and for use on their premises, in the manner and to the extent above defined."

*R. B. Dodge,* (*A. T. Saunders* with him,) for the defendant.

*L. K. Clark,* for the plaintiffs.

CROSBY, J.   This is a bill perpetually to enjoin the defendant from impairing or interfering with the alleged right of the plaintiffs to take waters from springs on the defendant's land.   By warranty deed dated May 15, 1849, George Whitcomb, the defendant's predecessor in title, granted and conveyed to William B. Willard, the plaintiffs' predecessor in title, "the right to take & use the water from a point near or below a certain spring or springs situated on the farm on

which I now live & about forty rods west of my buildings and about ten rods north of said Willards land and also the right to dig the necessary trenches and put dow- pipes [*sic*] suitable to carry the water to said Willards buildings: Also the right to take up and repair said pipes or put down new ones when it may be necessary." The titles to the respective premises of the plaintiffs and the defendant are not in controversy. The farm of the plaintiffs is adjacent to that of the defendant. It appears that there are several springs upon the farm of the defendant, as shown by the record and the plan annexed thereto, but the questions of law raised relate only to those referred to as springs A and B. The case was referred to a master who has filed a report. The evidence is not reported. An interlocutory decree confirming the report, and a final decree in favor of the plaintiffs, have been entered. The case is before us on an appeal from the final decree.

The controversy is chiefly over the right of the plaintiffs to use the waters of spring B and the extent of such right under the deed of May 15, 1849. It appears that William B. Willard, the grantee, soon after the grant, laid a pipe, from certain buildings on his farm to a point near springs A and B on the Stone farm, through which water was conveyed to the Willard place; this connection has been maintained to the present time, and a continual supply of water has been obtained for the use of the occupants of the Willard place without interference from the owners or occupants of the Stone farm except as hereinafter referred to. During this period a second pipe was laid from the Willard farm to this part of the Stone farm and two hydraulic rams were there operated transmitting water to the Willard place. The springs A and B are on the side of a hill down the grade of which waters from the springs in their natural state flowed by gravity. To ensure an adequate flow of water into the rams, a reservoir (called the Willard reservoir) was constructed by the original grantee at a grade below the springs in such a manner as to fill from the waters of the springs. The master found that there are upon the Stone farm in the vicinity of the Willard reservoir several springs and several other rams and reservoirs supplying water to other persons

nearby. When the pipes were laid by Willard, the original grantee, near springs A and B, he also constructed a shallow pool covered with flat stones, which is the Willard reservoir above referred to; at the same time a pipe was run from spring A to this reservoir which furnished the main supply of water to the Willard farm until about seventeen years before this bill was filed.

About thirty-four years before the bill was brought a rough dam was built by the then owner of the Willard farm by permission of the owner of the Stone place for the purpose of retaining the water from the springs, and to prevent it running away, and for the benefit of the Willard farm. About seventeen years later Luther Willard (then owner of the Willard farm), by permission of this defendant (owner of the Stone place), enlarged and strengthened the dam below the level of the springs, and at the same time enlarged and improved the Willard reservoir, and laid a pipe between it and spring B. Spring B was then or had been previously walled in and enlarged. These improvements and connection with spring B were upon an oral agreement with the defendant, that Willard would fill in the land about the springs so that there would be no open water, and would construct a drain from the land above the dam to prevent the collection of surface water, and would maintain two rams instead of one as the maintenance of two would be a benefit to the owner of the Stone place in his supply of water. The dam was constructed as agreed, but it was not maintained in a serviceable manner, and the filling was not done. Two rams were installed as agreed and maintained for some years, but for at least eight years before the present suit was brought only one ram has been in operation. During the seventeen years before the bringing of the suit the defendant has taken no action and done nothing to assert his rights under the agreement, although he has complained that it had not been complied with.

At various times since water has been supplied from the Stone farm to the Willard farm there has been kept upon the latter as many as sixty head of cattle, but at the time of the acts complained of in 1923 the house on the Willard farm was

unoccupied as a dwelling, and the cattle there kept did not exceed eighteen in number. On or about August 1, 1923, the defendant built a reservoir (shown on the plan as the "Stone reservoir") just above the dam previously constructed by the plaintiff's predecessor in title, and in close proximity to spring B, and laid a pipe from spring B to the Stone reservoir. This pipe was laid at the same level from spring B to the reservoir as the pipe from spring B to the Willard reservoir, with the result that thereafter the water from spring B flowed into both reservoirs. The Stone reservoir was used to supply water by means of a ram to the house of one Rich, built by the defendant on nearby land which he had sold to said Rich. The defendant also connected his reservoir with two other springs (marked C and D, and shown on the plan) on account of which the plaintiffs make no complaint.

There is nothing to show that before 1923 the supply of water from the reservoir on the Stone place to the Willard farm had not been adequate, but during that year, and at the time or soon after the connection was made from spring B to the Stone reservoir, there occurred an unprecedented drouth, and the supply of water in the Willard reservoir was not adequate to supply the needs of the occupants of the Willard farm; there were times during that summer when the ram in the Willard ram pit did not operate for lack of water, and although the amount of water used on the Willard place had not increased, the supply had decreased. Since then the supply of water for the Willard reservoir has been adequate, as there has not been in the interim any extraordinarily dry weather. The master found, as alleged in the bill, that on or about August 1, 1923, as a consequence of running a pipe from spring B to the Stone reservoir by the defendant the supply of water from that spring into the Willard reservoir was diminished.

At the outset the question is, what rights vested in the plaintiffs by virtue of the deed given in 1849 to their predecessor in title? It granted the right to take and use the water from a point near or below a certain spring or springs situated on the farm now owned by the defendant and about

forty rods west of the buildings on the servient estate and about ten rods north of the grantee's land, and also the right to dig the necessary trenches and lay pipes suitable to convey the water to the buildings on the grantee's farm, and the right to repair the pipes when necessary.  The rights so granted to take the water by implication and as incidental thereto include the right to perform such acts as are reasonably necessary to make the grant effective. *Prescott* v. *White*, 21 Pick. 341. *Condon* v. *Winn*, 252 Mass. 146. No question is raised respecting the right of the grantee, and those claiming under him, to build the original dam and reservoir and install rams upon the Stone place.  The grant, as interpreted by the conduct of the owners of both estates during the years since 1849, shows that the plaintiffs have a right to use spring B so far as in good faith required for their reasonable needs for farming and domestic purposes in the manner and to the extent that the same hitherto has been enjoyed, and that the defendant has no right to use spring B in such manner as to interfere with such rights of the plaintiffs. *Stevenson* v. *Wiggin*, 56 N. H. 308.  It follows that the plaintiffs have a primary right under the deed to take the waters of spring B for necessary purposes; that right was not questioned by the owners of the servient estate for at least fifty years since 1849.

The court in entering the decree ruled that the plaintiffs were entitled to take all the waters from the springs provided the same was in good faith reasonably necessary and required for use on the Willard farm, and that the plaintiffs were entitled to make such reasonable arrangements about the springs as were necessary to enable them to use all the water if required; and that the acts of the plaintiffs were reasonable under the circumstances disclosed.  There is nothing to show that the plaintiffs have done anything more than was reasonably necessary for the purpose of saving and using the water in good faith required by them on their farm. The rights so vested in them still remain unless they have been abandoned, or have been lost or impaired by the oral agreement hereinbefore referred to.  The abandonment of

an easement, whether acquired by grant or prescription, cannot be found unless it clearly appears that such abandonment was intended by the owner. *Dyer* v. *Sanford,* 9 Met. 395. *Jamaica Pond Aqueduct Corp.* v. *Chandler,* 121 Mass. 3, 4. In the present case there is nothing to show an abandonment; on the contrary, it is plain that the plaintiffs have intended at all times to rely upon the rights acquired under the deed.

What is the effect of the oral agreement made between the plaintiffs' predecessor in title, Luther Willard, and the defendant? It appears that Luther Willard, who at that time owned the Willard farm, enlarged and improved the dam and reservoir below the springs, and laid a pipe from spring B to the reservoir. Those acts were done under the oral agreement then made with the defendant that Willard would fill in the land about the springs, construct a drain to prevent the collection of surface water, and maintain two rams instead of one for the benefit of the water supply of the defendant. The defendant contends that the plaintiffs and their predecessor in title had no right to connect the Willard reservoir with spring B independently of the oral contract, and that no such right inured to the plaintiffs under the agreement because the promises therein made by Luther Willard were not performed; and that no prescriptive right had been acquired to maintain that connection. The difficulty with that contention is that as Willard had the absolute right under the deed to connect with any or all of the springs if necessary and do whatever was reasonably required on the land to make the taking effective, he obtained no additional rights under the oral agreement. For that reason the court's ruling that the exceptions to the findings relating to the oral agreement were immaterial; and the further ruling that the grant gives the "plaintiffs the right to use all the water if necessary; not the exclusive use but the primary right to use all if necessary," was correct.

· We need not determine whether the defendant could have maintained an action for damages for breach of the agreement of Luther Willard if it had been seasonably brought.

It is settled that an easement is an interest in land, and that it cannot be renounced or extinguished by a parol agreement between the owners of the dominant and of the servient tenements. *Dyer* v. *Sanford, supra.*

The contention of the defendant that the grantee in the deed, having originally laid a pipe to spring A, thereby elected to exercise his right to the easement, and could not thereafter extend or enlarge his right by taking water from any other spring, cannot for the reasons already stated be sustained. The taking of water from spring B was not an extension or enlargement of the right granted. It was merely the exercise of a right given by the deed. The right to take the waters "at a point near or below a certain spring or springs" plainly shows that the grantor intended that the grantee and his heirs and assigns should have the right to resort to the waters of any springs in that locality so far as necessary, in good faith, for an adequate supply of water for farming and other domestic purposes. We assume from the record, although not so expressly stated, that the first ram which forced the water to the Stone place was located below the Willard ram. That fact indicates that the primary right of the occupants of the Willard farm to take the water was recognized by the defendant's predecessor in title.

The familiar rule of construction that, where a right of way, or other easement, is granted by deed without fixed and definite limits, the practical location and use of such way or easement by the grantee under his deed, acquiesced in by the grantor at the time of the grant and for a long time subsequent thereto, operate as an assignment of the right, and are to be deemed to be that which was intended to be conveyed by the deed, and are the same in legal effect as if they had been fully described by the terms of the grant, *Naumkeag Steam Cotton Co.* v. *American Glue Co.* 244 Mass. 506, 508, is not applicable to the easement considered in the case at bar. There is no uncertainty as to the locations of the springs from which the right to take water was given; they are definitely described in the deed as "a certain spring or springs situated on the farm . . . about forty rods west of my buildings and about ten rods north of said Willards

land." The locations of the springs A and B manifestly conform to that description.

It follows from what has been said that the maintenance by the defendant of the pipe connecting spring B with the Stone reservoir at the level of the plaintiffs' pipe, and the taking of waters from spring B in that manner, are in derogation of the plaintiffs' prior right to the use thereof and entitle the plaintiffs to equitable relief.

*Decree affirmed.*