Argued October 6; affirmed November 22; rehearing denied
December 20, 1938

## DEAN *v.* COLT ET AL.

(84 P. (2d) 481)

*J. P. Kavanaugh* and *Robert C. Bradshaw,* both of Portland (Kavanaugh & Kavanaugh, Robert C. Bradshaw, and Harry G. Hoy, all of Portland, on the brief), for appellant.

*C. E. Zollinger,* of Portland (Pendergrass & Zollinger and Robert M. Kerr, all of Portland, on the brief), for respondents.

KELLY, J. This is a suit to enjoin defendants from using an automobile driveway upon plaintiff's property. A demurrer to plaintiff's amended complaint was sustained. Plaintiff declined to plead over and from the resulting decree of dismissal plaintiff has appealed.

The property involved in this suit is in block 53 in Irvington within the corporate limits of the city of Portland. This block is bounded on the east by Northeast 17th Avenue, on the west by Northeast 16th Avenue and on the south by Northeast Knott Street. Plaintiff's property embraces a parcel in the southwest corner of said block extending easterly from the southwest corner thereof along Northeast Knott Street a distance of 70 feet; thence northerly 100 feet, thence westerly 70 feet and thence southerly to the southwest corner of said block. The property of defendants, Anna V. and C. C. Colt adjoins and lies immediately to the east of plaintiff's property, beginning at the southeast corner of plaintiff's above described parcel and running easterly 60 feet along Northeast Knott Street, thence northerly 100 feet, thence westerly 60 feet and thence southerly 100 feet to the southeast corner of plaintiff's parcel. The property of defendants, W. J. and L. H. Kerr adjoins and lies immediately to the east of the above described parcel of said defendants, Anna V. and C. C. Colt, beginning at the southeast corner of said Colt's parcel and running easterly 70 feet along Northeast Knott Street to Northeast 17th Avenue; thence northerly 100 feet along the westerly line of said Northeast 17th Avenue; thence westerly 70 feet and thence south-

erly 100 feet to the southeast corner of said Colt's parcel.

These three parcels of real property above described extend from Northeast 17th Avenue to Northeast 16th Avenue. A plat thereof appears in the opinion in the case of *Dean v. Colt,* 151 Or. 331, 332, 49 P. (2d) 362. The defendants Kerr now occupy the property identified by that plat as "Richardson residence".

The prior grantors of the above described property constructed a concrete roadway across said property from Northeast 16th Avenue to Northeast 17th Avenue, approximately seven feet in width which was permanently laid and affixed to the soil on and across the south seven (7) feet of the north twenty (20) feet of the said entire tract, comprising the three above described parcels. Said driveway was designed by said prior grantors as a permanent, hard surfaced automobile driveway serving each and all of the said three parcels; and said property was improved as residence property by said prior grantors and each of said properties was sold by them with the understanding between said prior grantors and the purchaser that the said concrete driveway should be regarded as an entire driveway across said properties according to said resubdivision and should be a common driveway serving each and all of said properties.

In addition to the parcel first hereinabove described, plaintiff was at all times herein mentioned the owner of property adjacent to and on the north of said described parcel, the same being lot 13 and the south 40 feet of lot 14 in said block 53.

That prior to September 17, 1935, plaintiff and defendants became the respective owners in due course by mesne conveyances of the above described parcels of property respectively and on and for sometime sub-

sequent to said 17th day of September, 1935, enjoyed and were enjoying in common the right of easement to the said driveway as originally created with some slight alterations near the westerly end thereof and which said alterations were wholly on plaintiff's property and had previously been made by agreement among the persons interested, the said right of easement being a right of easement to a driveway for passenger automobiles extending, as aforesaid, from Northeast 16th Avenue to Northeast 17th Avenue, bisecting all of the said properties hereinabove described, and said driveway consisted at all times of a permanent hard surfaced driveway, the portion thereof crossing the property of the said defendants above described being approximately seven (7) feet in width and permanently laid and affixed to the soil along and across the southerly seven (7) feet of the northerly twenty (20) feet of each and both of the said property of said defendants.

The foregoing facts are derived from the amended complaint. We quote paragraphs IV, V, VI and VII of said amended complaint:

## "IV .

"That during the months of October and November, 1935, the above named defendants without seeking or obtaining consent thereto from this plaintiff, and without consulting this plaintiff regarding the matter, proceeded to make certain changes in said driveway where it crossed their said properties and in their said respective premises, the full extent of which said changes is unkown to this plaintiff, but which changes consisted in part of tearing up the said paved driveway where it crossed the said property of the defendants W. J. Kerr and L. H. Kerr and a portion of the premises of said defendants Anna V. Colt and C. C. Colt, and in placing the same along the extreme northerly side of the property of said defendants W. J. Kerr and L.

H. Kerr, and connecting the same directly with the northerly portion of the easterly end of the garage of said defendants Anna V. Colt and C. C. Colt, and by all of which changes, the full extent of which are at this time unknown to this plaintiff, rendering it impossible for this plaintiff to enjoy an automobile driveway over and across the said properties of said defendants, thereby obstructing the said right-of-way over which this plaintiff theretofore had, in common with said defendants, and each and all of them, an easement for passenger automobile travel and traffic, as aforesaid, from Northeast 16th Avenue to Northeast 17th Avenue, across said Block fifty-three (53), Irvington.

## V

That by the said action of said defendants the said common easement theretofore existing on the part of the several owners of said properties whereby each was entitled to an automobile driveway over and across the property of each and both of the others was obstructed and destroyed. That this plaintiff has acquiesced in the said action of said defendants in so obstructing and destroying said common easement, and has made, and makes no objection thereto, assuming that such acquiescence results in an extinguishment of said common easement in its entirety.

## VI

That nothwithstanding the facts hereinabove set forth the said defendants are claiming and asserting the right to exercise the said former rights existing in them to the use of the said common driveway where the same crosses this plaintiff's property, as an automobile driveway serving their said properties or property, and the said C. C. Colt has, on numerous occasions, unlawfully trespassed upon plaintiff's said property by so using the same; and that unless restrained by decree of this Court said defendants will continue to use the same as in the past, without any reciprocal or compensating right of this plaintiff to a similar right-of-way over and across their said properties, whereby this plaintiff's property will be greatly depreciated in

value as a residence property, and by all of which the said threatened action of said defendants will constitute a continuing trespass, or intermittent trespasses, on the said property of this plaintiff.

## VII

That the said common easement for said driveway bisecting the three properties above mentioned and described in Subdivsion numbered III of this Amended Complaint, was a perpetual easement, and it is wholly impossible to measure or determine with any degree of accuracy the amount of damages sustained and which will be sustained by the plaintiff by reason of the action of said defendants in so obstructing and destroying the said driveway where the same crossed the said properties; and that this plaintiff by reason of said acts has no plain, adequate and complete remedy at law.''

The question is whether the above facts disclose an abandonment by defendants of the right-of-way in suit, and if not, whether facts are pleaded showing a trespass on defendants' part in obstructing said right-of-way.

█ The purpose of this suit is to declare a forfeiture of the easement across plaintiff's property. ''The courts are not inclined to favor forfeitures of easements unless the intent to abandon them plainly appears.'' *Barton v. Jarvis*, 218 Ky. 239 (291 S. W. 38) ; *Willard v. Stone*, 253 Mass. 555 (149 N. E. 681) ; *Arlington Realty Co. v. Keller*, 105 N. J. Eq. 196 (147 Atl. 437).

The intention to abandon is the material question. 9 R. C. L., Easements, p. 812, § 68, note 8; 19 C. J. Ibid, p. 941, § 149, note 18; 1 Am. Jur. Abandonment, p. 6, § 6, note 17; 1 C. J. S., Ibid, p. 8, § 3a.

Paragraph VI of the amended complaint dispels the conclusion that defendants actually intend to abandon their easement over and upon plaintiff's property.

The case of *Polyzois v. Resnick,* 123 Neb. 663 (243 N. W. 864), cited by plaintiff, does not disclose any use of the easement or any attempted use thereof by defendants subsequent to the construction by them of a one-story brick building upon, over and across the portion of the easement upon defendant's property. In fact, defendants alleged in their answer that when they erected said brick building they "had no knowledge or notice that plaintiffs had or claimed to have any right of easement in or to any of the ground on which said building was erected." The course taken by defendants in this Nebraska case is entirely inconsistent with an intention to make any further use of the easement.

The case of *Dillman v. Hoffman,* 38 Wis. 559, also cited by plaintiff, is one wherein the plaintiff sought a decree enjoining the obstruction of stairways and passageways in a three-story building, the north 20 feet of which was owned by plaintiff and the south 60 feet by defendant. In this building, there were front and rear stairways. Within a year before the commencement of the action, defendant erected a partition in the division line in the rear stairway, and in the hall nearly to the front stairway, and threatened to extend this partition to and through said front stairway along said division line to the front sidewalk.

Several years before the suit was brought plaintiff's grantor, while seized, built a permanent partition, ever since maintained, inclosing within his own premises a great part of the common halls and passages in the upper stories upon his own estate, and removed a stairway between the second and third stories, part of the common way, from those of his own premises to those of the appellant. The Wisconsin supreme court held that this encroachment upon and change in the common way was made by plaintiff's grantors without defend-

ant's consent and that the easement was extinguished by the erection of the permanent obstruction by plaintiff's grantors and defendant's later acquiescence therein manifested by the erection by defendant of the obstruction in suit. The record does not reflect any intention on the part of plaintiff's grantors to continue the use of the easement so obstructed during the several years which elapsed after the obstruction was made by plaintiff's grantors before plaintiff acquired the title. On the contrary, the course of plaintiff's grantors is entirely inconsistent with such an intention.

*Stenz v. Mahoney,* 114 Wis. 117 (89 N. W. 819), also cited by plaintiff, deals with the right to use a stairway. The court held that by reason of the language of the grant, the easement was one to be used in common only as long as existing conditions continued. The language so construed is, ''together with the use of a stairway as the same is now constructed and used, and on and adjoining said property on the east side thereof, and to have free access and use of said stairway so long as the same shall there remain.''

In construing this language and the other provisions of the deed, the Wisconsin court said:

''Then follows an attempt to provide for a permanent easement for a stairway to be used in common, three feet wide; one half to be on plaintiffs' land and the other on the premises now owned by the defendant. By using the word 'east' instead of the word 'west' in describing its location, the deed carried the easement away from the plaintiffs' land. It seems perfectly evident that the parties did not intend a perpetual easement to be created as to the stairway in use at the time the deed was made. The deed speaks of such stairway as being 'on and adjoining' the property conveyed, and grants the use thereof so long 'as the same shall there remain.' So long as it remained as it then existed,

it was to be used in common. There was no restriction as to either party's changing the conditions. There was no attempt made to create an easement to be entirely upon the property to the east. On the contrary, the intention plainly manifest is that the perpetual easement should rest equally on each tract, and apt words were used to indicate that intention, except for the mistake mentioned. The defendant admitted that to have been the purpose in the deed when she offered to permit her premises to be used for a stairway in connection with an equal strip of plaintiff's land. The plaintiffs seem not to have been satisfied with this offer. They compelled defendant to remove her building and stairway as it existed when the deed was made, entirely upon her own land, and then blocked the 1½ feet on the east of their building, intended for the common stairway, by moving their building to the east line of their lot. They now insist upon a right to use the stairway entirely upon defendant's premises. We do not think this claim is sustainable under the deed mentioned. 'Every privilege which one man claims in derogation of the rights of another is viewed with jealousy by the law, and it will require it to be confined to the prescribed limits and specified object of the grant.' Taylor v. Hampton, 4 McCord, 96, 17 Am. Dec. 710. Rights of the sort claimed by plaintiffs are servitudes, and may be extinguished by act of God, operation of law, or by act of the party. A servitude may be extinguished by renunciation of the party entitled to it, either express or implied. When the act which prevents the servitude is by the party to whom the servitude is due, it is wholly extinguished. Any act wholly incompatible with the nature and exercise of the servitude is sufficient to extinguish it. These principles are laid down and elaborated in the case cited, and have been recognized and enforced in this state. Dillman v. Hoffman, 38 Wis. 559. See Duncan v. Rodecker, 90 Wis. 1, 62 N. W. 533; Corning v. Gould, 16 Wend. 531, They have direct application to this case. When plaintiffs required the defendant to change the condition existing at the time the deed was made, there was an

implied renunciation of the easement as it then existed. When they moved their building onto the strip reserved for the common stairway, such conduct was incompatible with the easement attempted to be created by the deed. The original easement was one to be used in common so long as existing conditions continued. When they were changed, the intent was perfectly evident that each tract should bear a part of the common burden. Plaintiffs, by an adverse permanent obstruction of the common easement, left it within the power of the defendant to elect to declare the easement extinguished. Whether that has been done in this case, we need not stop to inquire. It is sufficient for the purposes of this appeal to say that plaintiffs' conduct has extinguished the temporary easement as created by the first clause in the deed, and that they cannot now claim to use defendant's stairway, located entirely upon her own land.''

*Tremberger v. Owens,* 80 App. Div. (N. Y.) 594 (80 N. Y. S. 694), also cited by plaintiff, is a case wherein plaintiff obstructed the portion of the easement upon the property by fencing and by planting the portion of the avenue in front of her premises with grass, shrubs and other ornamental plants with the intention of using the same as her own property. These fences were in existence at the time defendant acquired title to the premises upon which he proposed to erect his buildings. There is nothing in the record to indicate that plaintiff intended to make use of the easement as such during the time elapsing after she had so obstructed it and the time when defendant acquired his title to the adjoining premises.

*Steere v. Tiffany,* 13 R. I. 568, also cited by plaintiff, was an action of trespass on the case for obstruction of an easement, which considered as a private way, was created for the common use of the owners, whose

opposite lots met in the center of it subject to the easement.

We quote from the opinion:

"After the layout of Summer Street diagonally across the way, the plaintiff or his predecessor in title took exclusive possession of the half in front of his lot by moving his house forward. His next neighbor did likewise. The owner of the lot on which the gangway leading from the way to Broad Street closed the gangway. These acts were all done without objection. The result is that the way as originally established has practically ceased to exist; and when the defendant, following the plaintiff's example, took possession of the small bit of the way lying between the plaintiff's lot and Summer Street, he thereby unmistakably signified his consent to its destruction. The plaintiff, in suing him, is suing for an obstruction, not of the way as created, but of a mere bit of it, which is convenient for his individual use, but which, partly in consequence of his own acts, is no longer capable of being used as originally intended. Can he maintain his action? We think not. The way, if it ever existed as a private way, so existed by implication or estoppel not by express grant. To ascertain its character, therefore, we must look to the circumstances of its creation, and doing so, we think it is manifest that the way was intended to exist as a whole, and not in halves, and that consequently to take away either half is to destroy it, and the party taking must be held to have renounced or abandoned his right in the other half. The case in this aspect is almost identical with Corning v. Gould, of which the court in Crain v. Fox, remarks, that the fence erected in the centre of the way was an unequivocal act of renunciation, for the plain reason that the use of the way in common was rendered impossible by it. We do not see how it is possible for us to hold in the case at bar that the defendant is liable, without also holding implicitly that the way as originally established still exists, and that the plaintiff is liable likewise for constructing it. This result, however, the

plaintiff disavows, and his disavowal must be taken conclusively against him as a renunciation of the easement.''

In *Corning v. Gould*, 16 Wend. (N. Y.) 531, also cited by plaintiff, the supreme court of New York remanded the case for retrial so that among other questions that of the encroachment of the wall erected by plaintiff could be found distinctly one way or the other by the jury, and its extent if any; and the circumstances under which the fence (also constructed by plaintiff) was erected, the intent with which that was done, provided any explanation that it was for a mere temporary purpose was given; the condition of the premises more particularly, at the time of defendant's purchase; and whether he was apprised that the way would be insisted on notwithstanding appearances.

In the case at bar, plaintiff pleads that defendants are insisting upon a continuance of the way.

In *Bricault v. Cavanaugh*, 261 Mich. 70 (245 N. W. 573), it appears that plaintiffs constructed a dwelling house occupying the entire portion of their lot reserved for the easement. That easement consisted of a joint driveway over the south five feet of the north half and the north five feet of the south half of a certain lot. The north half of the lot was owned by defendants and the south half by plaintiffs. The obstruction placed by plaintiffs upon the premises prevented the enjoyment of the easement by either party. It foreclosed any other conclusion than that plaintiffs no longer intended to use it.

*McKee v. Perchment*, 69 Pa. St. 342, is presented upon exceptions to the trial court's action in receiving testimony offered by plaintiff tending to show that obstruction upon and inconsistent use of the easement

in question were for temporary purposes only and not with any intention to abandon the easement. The other points determined in that case are not before us in the case at bar. The supreme court affirmed the district court.

In disposing of the question under consideration here, the Pennsylvania supreme court said:

"The principal defence set up on the trial was that the easement had been abandoned. It is plain that no one proprietor could do this. All the grantees of lots had an equal interest, and it required the concurrence of all. An enclosure upon any part of it would have been a disturbance of all, as it had an outlet at both ends. The defendant below and plaintiff here undertook to make out the defence by proving that it had been enclosed on each side by a fence built through the middle of it; that stables, coalhouses, privies had been erected, and trees and bushes planted on the soil over which it would otherwise have run. Now certainly, to rebut this evidence, it was entirely competent for the plaintiff below to prove by the acts and declarations of the different proprietors that the occupation and use of it in the manner stated were for temporary purposes only and not with an intention to abandon the easement."

In *Ermentrout v. Stitzel, Trustee,* 170 Pa. 540, 544 (33 Atl. 109), it was held that the acceptance of a deed containing no reference to a private alley, by one having actual and constructive notice and knowledge of the existence and location of such alley and the purposes to be served thereby does not constitute an abandonment of such easement. It is also held that abandonment is not shown because plaintiff abstained from fencing off the alley, did not remove an apple tree standing therein; and erected a grape arbor partly within the space covered by the alley.

We find nothing in the cases cited by plaintiff holding that mere obstructions in a right of way constitute an abandonment where the party placing such obstructions there still manifests an intention to use and does continue to use the right of way for the purposes for which it was created.

In a case involving an easement for the purpose of maintaining a drainage ditch, this court has held that the fact that the water, either from a scarcity of water or seasonable drought, did not come down in such quantities as to render the use of the ditch to its usual capacity necessary, would not be construed as an abandonment unless the lack of use was continued for a period of ten years, or at least long enough to indicate an intention on the part of the owner of the dominant premises to discontinue its use permanently. *Bowman v. Bradley,* 127 Or. 45, 54 (270 P. 919).

We venture to quote from an early Pennsylvania case:

"The defendants have erected a building on each side of, and over their part of the alley, and the plaintiff avers that, by reason of this, the capacity of the alley has been reduced, so that he cannot have his proper enjoyment of it; and claims that, on this account, he has a right to revoke the alley privilege granted to the defendants; and complains that, though he did so, yet the defendants continue to use the alley over or appurtenant to his lot, and thus obstruct his use of it.

Admit the encroachment averred, does the right to revoke the grant follow? This is the only question that demands consideration. * * *

The question is really too plain for argument. This is not a case of mutual and dependent covenants, when one party is not bound to perform if the other fails. But it is a case of vested, executed rights, which one party claims to have forfeited, because a kindred right of his has been encroached upon, though not taken away.

It would not prevent, but rather foster, litigation to sanction such a principle. And there is no necessity for it; for the law gives an adequate remedy for such encroachment, by action. To allow one party to revoke the other's rights for a mere encroachment would be to hold out inducements to undertake reprisals, that must, in the nature of things, result in open war. It would be a rule incapable of definition, and therefore liable to continual abuse. Under the smallest annoyances, which must occasionally arise between tenants in common, the right of revocation would be claimed and suits would be the natural consequence. The cause was properly tried. The plaintiff's remedy is by action for the obstruction of the other part of the alley, and not by revocation of the use of the part granted to the defendants." *Ebner v. Stichter,* 19 Pa. St. 19, 23.

In an early South Carolina case, the supreme court of that state, in treating this question said:

"In the case of a right derived by grant or prescription, the only effect of such an interference would be to give the injured party a right to an action for his damages, or, if the nature of the interference admitted of it, a remedy by injunction. It cannot be regarded as in the nature of a partition of a common right of way, for the parties are not connected as tenants in common of a right of way, but each has a several right of way over so much of the other's land. They are connected only as it regards the consideration upon which the user is supposed to depend. To conceive that they are tenants in common of a right of way would involve the idea of one having a right of way over his own lands, which cannot be." *Craven v. Rose,* 3 S. C. (3 Rich.) 72.

In a Massachusetts case, it is said:

"It appears that the Union Stone Company, before 1885, erected in Front Street west of the respondent's present premises, a building and a fence closing the street. The effect was to enclose the northerly half of the street abutting on a small part of lot 4, leaving

unobstructed the way from that point, which was westerly of respondent's land, to Locust Street. It cannot be said as a matter of law that these acts conclusively show an intention to abandon the way over the easterly part of Front Street, especially when it appears, as the report discloses, that this corporation and its successors in title continued to use this part of the street.

We are of the opinion further that the erection of the building by Joyce, Curran and Walsh, the respondent's predecessors in title, over that part of Front Street in which they owned the fee, was not as matter of law an abandonment of their easement over the rest of the easterly part of Front Street. Abandonment is a question of intent. In some cases, where acts of the owner of the dominant estate have seemed to be entirely inconsistent with an intention to make any further use of the easement, especially where a change in circumstances has rendered the easement no longer of any benefit, such acts have been regarded as showing conclusively as matter of law an intention to abandon, and the consequent extinguishment of the easement. Corning v. Gould, 16 Wend. 531, Canny v. Andrews, 123 Mass. 155, Dillman v. Hoffman, 38 Wis. 559. Since abandonment, however, is a question of intent, any act relied upon either must be accompanied by evidence of intention, or be in its nature such as necessarily to show an intention to abandon." *New England Structural Co. v. Everett Distilling Co.*, 189 Mass. 145, 154 (75 N. E. 85).

A similar rule was applied in *Vinton v. Greene*, 158 Mass. 426, 33 N. E. 607, and *Brooks v. West Boston Gas Co.*, 260 Mass. 407 (157 N. E. 362).

The court of appeals of the state of Kentucky reviewed a judgment for plaintiff compelling defendant to open a certain passageway over defendant's land and enjoining defendant from further closing it. The passway as originally fixed was at a certain gate. This gate, however, had been closed by plaintiff, who had

built a fence in front of it and attempted to change the way by leaving an opening some 200 yards further north. Defendant had closed the opening thus left, and refused to allow anyone to pass. The court of appeals held that the change made by plaintiff in closing the gate and making an opening 200 yards north of it was not an abandonment of the right to pass notwithstanding that such change could not have been made without defendant's consent. *Faulkner v. Duff*, 14 Ky. L. 227 (20 S. W. 227).

In a New Jersey case it was held that the construction of a fence across a street would not prove an intention to abandon a right of way thereon. *White v. Tide Water Oil Co.* (N. J. Eq.) 33 Atl. 47.

A comparatively recent Massachusetts case holds that the maintenance for 40 years of a fence across, and the construction of buildings upon a portion of, a right of way does not extinguish the easement but restricts its limits to the unobstructed portion thereof. *Brooks v. West Boston Gas Co.*, 260 Mass. 407 (157 N. E. 362).

Annotations upon the subject, Loss of Easement, appear in 1 A. L. R. p. 884, et seq., and 66 A. L. R. p. 1099, et seq.

■■ For the reasons above stated, we hold that plaintiff's amended complaint expressly negatives an intention on defendants' part to abandon the right of way in suit. It also expressly pleads acquiescence by plaintiff in the course taken by defendants which negatives a claim for trespass.

For these reasons the demurrer to said amended complaint was properly sustained.

The decree of the circuit court is affirmed.

RAND, ROSSMAN and BELT, JJ., concur.