Argued and submitted July 9, reversed and remanded October 31, 2001

Davie R. SHIELDS
and Craig A. Bloom,
*Appellants,*

*v.*

Joseph A. VILLAREAL,
*Respondent.*

Joseph A. VILLAREAL,
*Counterclaim-Plaintiff,*

*v.*

Davie R. SHIELDS
and Craig A. Bloom,
*Counterclaim-Defendants.*

9811-07817; A108341

33 P3d 1032

Tod Eames argued the cause and filed the brief for appellants.

Craig Wymetalek argued the cause for respondent. With him on the brief was Douglas M. Bomarito, P.C.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Plaintiffs sought a declaratory judgment confirming their ownership of an express easement across defendant's property and an injunction ordering defendant to remove all impediments from it and to refrain from future interference. In his answer and counterclaim, defendant argued that plaintiffs had abandoned the easement and it should therefore be extinguished. The trial judge found by a preponderance of the evidence that plaintiffs had abandoned the easement, and he entered judgment as requested by defendant. On *de novo* review, we reverse and remand.

Plaintiffs own property immediately north of property owned by defendant. Plaintiffs' deed contains an express easement that runs along the north 15 feet of defendant's property for the length of the boundary between the two parcels. In 1987, plaintiffs constructed an automotive machine shop and parking lot on their property. In the process, they graded their parcel and put in a curb and a row of bushes along the property line between their lot and defendant's. As a result, the elevation of plaintiffs' property is higher than the elevation of the easement on defendant's property; the difference varies from a few feet at the east end of the property line to more than six feet at the west end. Near its steepest point, the berm between the curbing and the easement is sloped at an angle of between 35 and 45 degrees.

In 1998 or 1999, defendant decided to turn his then-undeveloped parcel into a steel yard. In the process, he placed large amounts of fill dirt on the easement, blocking plaintiffs' ability to traverse its length. After defendant refused to remove the dirt, plaintiffs initiated this action. At trial, in arguing over defendant's theory that plaintiffs did not and could not use the easement, the parties presented conflicting testimony as to whether it was possible for plaintiff to access the easement despite the curb, bushes and berm. Plaintiffs testified they trimmed the bushes approximately every two years so as to keep them low enough that their service trucks could clear them when bumping over the curb. Defendant testified that the bushes had grown into a "huge hedge" that completely blocked vehicular access. When asked if it was possible to access the easement as plaintiffs suggested,

defendant responded that it might be possible but that "I don't think anybody with a right mind would do it." The parties also presented conflicting testimony as to whether plaintiffs actually used the easement. Plaintiffs testified that they had continually used it to gain access to the rear side of their building in order to perform maintenance work and clear underbrush. Defendant, on the other hand, testified that he had never observed plaintiffs' service vehicles bumping over the curb or otherwise making use of the easement, he had never observed vehicle tracks on the easement, and he had never seen plaintiffs perform any building maintenance from the easement. The trial court agreed with defendant's version of the facts and found, by a preponderance of the evidence, that plaintiffs had "manifested an intent to relinquish possession * * * by performing acts inconsistent with the continued use of the easement and subsequently relinquished possession of the easement by non-use."

■      Plaintiffs argue that the court erred in using a "preponderance of the evidence" standard instead of a "clear and convincing evidence" standard and that, under the correct standard, the court's decision in favor of defendant was error. We begin with the question of which standard applies.

Although no Oregon case law explicitly announces the standard of proof for a claim of abandonment, plaintiffs argue that such a claim should be judged according to the same proof standard required to establish an easement by prescription, because in both instances the particular acts and motives of the parties establish grounds for extinguishing one party's previously recognized property right while at the same time creating a new property right in favor of the adverse party. Defendant, on the other hand, argues that in the absence of legislation to the contrary, ORS 10.095(5) requires a preponderance standard.[1] We agree with plaintiffs.

---

[1] ORS 10.095 provides, in pertinent part:

"The jury * * * are, however, to be instructed by the court on all proper occasions:

"* * * * *

"(5) That in civil cases the affirmative of the issue shall be proved, and when the evidence is contradictory, the finding shall be according to the preponderance of evidence[.]"

■■ *Zockert v. Fanning*, 310 Or 514, 800 P2d 773 (1990), describes two categories of civil cases in which the clear and convincing standard of proof might be proper. One category is not relevant to this case: quasi-criminal actions. *Id.* at 527 (citing *Riley Hill General Contractor v. Tandy Corp.*, 303 Or 390, 405, 737 P2d 595 (1987)). The relevant category consists of actions in which the evidence required to prove a particular kind of fact is of questionable reliability or trustworthiness. *Id.* Easement by prescription cases and abandonment by nonuse cases are within that category. In recognizing the creation of an easement by prescription, a court reallocates relative rights to the use of a parcel of land based on proof of how the purported easement holder has viewed and used it: Was the use adverse, continuous and uninterrupted over time? *E.g., Garret v. Mueller*, 144 Or App 330, 336, 927 P2d 612 (1996), *rev den* 324 Or 560 (1997). A court performs essentially the same function when it determines that an easement is extinguished by abandonment. In such cases, a court also reallocates relative rights to the land based on proof of how the easement holders have thought of and used it: Have they expressed or manifested an intent to make no further use of the easement? *E.g., Abbott v. Thompson*, 56 Or App 311, 316, 641 P2d 652, *rev den* 293 Or 103 (1982). In both types of cases, the relevant party's intent may be difficult to discern with accuracy, and any direct testimony from that party must be critically screened for the possibility of "self-serving declarations." *Powers et ux. v. Coos Bay Lumber Co.*, 200 Or 329, 398, 263 P2d 913 (1954). Given the similarity in the kinds of interest at stake, the facts to be proved, and the inherent difficulty of demonstrating the relevant intent, logic and consistency suggest that both types of claims should be subjected to the same standard of proof.

More persuasive, however, is the fact that Oregon courts have applied the clear and convincing standard to extinction-of-easement claims based on reasons other than abandonment. For example, in *Slak v. Porter*, 128 Or App 274, 278, 875 P2d 515 (1994), this court applied the clear and convincing standard to a claim that an easement was extinguished by adverse possession. Similarly, an easement was held to be extinguished by consent of the parties in *Tusi v. Jacobsen*, 134 Or 505, 515, 293 P 587 (1930), only after the

court was "convinced" by "decisive and conclusive" evidence of consent. We can discern no good reason why a claim that an easement no longer exists should be judged by a different standard depending on whether the facts giving rise to the claim establish consent, adverse use, or abandonment. In all those cases, easements are extinguished on the basis of proof regarding the particular actions and attitudes of the parties. And in all those cases, the same presumption applies: that easement rights remain secure in the party in whom they are vested by deed or other express grant unless clear and convincing proof to the contrary overcomes such a presumption.

Finally, we note that, although Oregon courts have not previously specified what standard of proof to use in abandonment cases, they have implicitly held the evidentiary bar to a level significantly higher than the preponderance standard. In *Bernards et ux. v. Link and Haynes*, 199 Or 579, 248 P2d 341 (1952), *adhered to on rehearing* 199 Or 604, 263 P2d 794 (1953), for example, the court quoted extensively from a number of authorities before concluding that a railroad right of way was not abandoned when it was sold and converted into a road for logging trucks. *Id.* at 591. Among the authorities cited was the following:

> "Thompson on Real Property, Perm. Ed., § 700 says:
>
> " '* * * An easement created by deed is not defeated by mere nonuser. There must be in addition other acts by the owner of the dominant estate *conclusively and unequivocally* manifesting either a present intent to relinquish the easement or a purpose inconsistent with its further existence.' " *Bernards*, 199 Or at 589-90 (emphasis added).

In another early abandonment case, the Supreme Court noted that at common law "the courts are not inclined to favor forfeiture of easements unless the intent to abandon them plainly appears." *Dean v. Colt,* 160 Or 342, 347, 84 P2d 481 (1938) (citations omitted). The courts rarely find such intent, and when they do it is because the acts manifesting the intent have so fundamentally changed the landscape that further use of the easement is deemed impossible. *See Haskell v. Borshowa,* 271 Or 326, 333, 532 P2d 14 (1975) (easement abandoned when building addition made it impossible to use easement without trespassing on neighboring

property); *Dean*, 160 Or at 347 (partial obstruction that does not prevent use does not manifest intent to abandon); *Abbott*, 56 Or App at 313, 316 (lack of maintenance that renders an easement difficult, but not impossible, to use does not evince intent to abandon).

■ Defendant argues that the "clear and convincing" standard is used in easement by prescription cases only because of ORS 105.620(1)(c), which requires that property claims based on adverse possession be proved by "clear and convincing evidence," and that, absent a similar statute specifically directed at abandonment claims, ORS 10.095(5) requires use of the preponderance of evidence standard.[2] Defendant's argument, however, misstates the import of those two statutes. ORS 105.620 is not the source of the "clear and convincing" standard in prescriptive easement cases. That statute was enacted in 1989, almost a century after the Supreme Court first used the phrase "clear and convincing" to describe the proof sufficient to establish adverse possession. *Rowland v. Williams*, 23 Or 515, 525, 32 P 402 (1893) ("The respondents have shown by clear and convincing proof that every element of adverse possession has been fully established by them."). The use of the clear and convincing standard, then, is not a matter of statutory but of common law; ORS 105.620 merely codifies a rule long recognized by Oregon courts that equity will not intervene to abrogate property rights granted expressly by deed in the absence of clear and convincing evidence. As early as 1868, the Supreme Court held:

> "To entitle a party to the decree of a court of equity, reforming a written instrument, it is incumbent upon him to establish [the grounds] by proofs, so satisfactory in their nature as to preclude all question. Equity tolerates nothing less. * * * Relief will not be granted whenever the evidence is loose, equivocal, or contradictory, or when, in its texture, it is open to doubts and opposing presumptions." *Shively v. Welch*, 2 Or 288, 290 (1868) (citation omitted).

*Accord Thomson v. Scott*, 270 Or 542, 547, 528 P2d 509 (1974) (requiring clear and convincing evidence to establish easement by prescription); *Cheney v. Mueller*, 259 Or 108, 124,

---

[2] ORS 10.095(5) is set out above. 177 Or App at 690 n 1.

485 P2d 1218 (1971) (requiring clear and convincing evidence to establish an easement by implication); *Hollen v. Fitzwater*, 125 Or App 288, 293, 865 P2d 1298 (1993), *rev den* 319 Or 80 (1994) (requiring clear and convincing evidence to establish constructive trust).

Moreover, contrary to defendant's theory, ORS 10.095(5) does not provide the exclusive standard of proof for civil cases. As the Supreme Court observed in holding that the "clear and convincing standard" applies to actions for common-law fraud:

> "ORS 10.095 is not cast in absolute terms. It requires the jury be instructed to apply the 'preponderance' standard 'on all *proper* occasions,' thus leaving some discretion for this court to decide which cases are proper for such an instruction and which are not." *Riley Hill*, 303 Or at 407 (citing *Mutual of Enumclaw Ins. v. McBride*, 295 Or 398, 405, 667 P2d 494 (1983)) (emphasis added).

In this abandonment case, the intent of the parties is material to the claim, the intent is difficult to discern, the claimant has incentive to make "self-serving declarations," *Powers*, 200 Or at 398, and the claim involves a matter of public concern. *See Hughes v. Helzer*, 182 Or 205, 224, 185 P2d 537 (1947). The clear and convincing standard is therefore appropriate, and the trial court erred in not applying it.[3]

■■ Clear and convincing evidence is evidence that is "free from confusion, fully intelligible, distinct" and which establishes that the truth of the asserted fact is "highly probable." *Riley Hill*, 303 Or at 407. In this case, that means the dispositive question is: Does unambiguous evidence lead with a high degree of probability to the conclusion that the curb, bushes and berm plaintiffs installed rendered access to the easement impossible (or so impractical as to be virtually

---

[3] A majority of states require clear and convincing, or as sometimes phrased, "clear and unequivocal" evidence of abandonment. *E.g., Stickney v. City of Saco*, 2001 Me 69, 770 A2d 592 (2001); *Hudson v. Pillow*, 261 Va 296, 302, 541 SE2d 556 (2001); *Harmon v. Rasmussen*, 13 Utah 2d 422, 424, 375 P2d 762 (1962); *Aiello v. Knoll Golf Club*, 64 NJ Super 156, 164, 165 A2d 531 (1960). *But see Sitterly v. Matthews*, 129 NM 134, 2 P3d 871, 878, *rev den* 129 NM 207 (2000) (requiring "substantial evidence" that the defendant had "clearly and unequivocally abandoned the easement").

impossible), thereby demonstrating an intention to abandon it?

Even deferring to the trial court's determination that defendant's testimony was "more accurate,"[4] we conclude that it establishes at most that the curb, bushes and berm made vehicular access to the easement difficult and potentially unsafe. And even defendant's testimony on that point is somewhat equivocal:

"Q: * * * Is there any way you can think of that a person could have driven a vehicle from [the plaintiffs'] property through the hedges and then * * * onto your property?

"A: I['ve] never seen it. I've never even seen tracks.

"Q: You think it's possible?

"A: It may be, but I don't think anybody with a right mind would do it.

"Q: Do you think you could safely navigate that in a vehicle?

"A: I don't know."

Later, when asked again, "Is there any way that you could drive a vehicle through?" defendant responded, "You may be able to. I just wouldn't — I wouldn't ever advise it."

Nor does the evidence conclusively establish that the obstructions actually prevented plaintiffs from accessing the easement. Proof of actual use "dispels the conclusion" that by obstructing access to the easement, plaintiffs manifested an intent to abandon it. *Dean*, 160 Or at 347. Defendant testified that he had never witnessed plaintiffs' service vehicles on the easement and was not aware of any maintenance work being performed from the easement. However, that testimony does

---

[4] Although the court found that, "on the face of it, both witnesses have impressed the court and seem to be even reasonable people," the court immediately qualified that observation by finding that, "[o]n balance, it makes more sense to me to think that the defendant more accurately is reflecting the facts that have occurred on the ground." That finding cannot be viewed as the kind of credibility determination to which a reviewing court defers, that is, one based on demeanor. Rather, it is a conclusion that defendant's version of events is more logical and internally coherent than plaintiffs' and therefore more probably accurate. Thus, even if we were to defer to the finding completely, it simply restates the preponderance standard, which, we have determined, is not enough.

not directly controvert plaintiff Bloom's testimony that plaintiffs' service vehicles had in fact used the easement on several occasions to spread barkdust and perform maintenance on the rear side of their building. Defendant testified that he does not live on the property, and that while he visits it approximately two to three times a week, there have been periods of time where he did not do so for up to a month at a time. It is therefore possible that plaintiffs used the easement at times when defendant was not present to observe their activity. Indeed, photographic evidence in the record shows barkdust and landscaping at the rear of plaintiffs' building that could have been accomplished only from the easement.[5]

In short, we cannot say that the evidence establishes to a high degree of probability that plaintiffs manifested an intent to abandon the easement by installing a curb, hedge and berm. Nobody testified to that effect, nobody contradicted testimony from one plaintiff that he had actually used the easement, and the photographic evidence is inconclusive.

Reversed and remanded.

---

[5] An additional inference regarding maintenance on the building can be drawn from the photographic evidence. The pictures identified by defendant as taken when plaintiffs first developed their property in 1987 show the building to be grey in color with green trim; other photographs submitted by plaintiff carry a date-stamp of October 12, 1999, and show the building painted white. Presumably, the easement would have to have been used to access the rear of the building in order to paint that side.