JABEZ FURNER, Respondent, *v.* OTIS SEABURY, Appellant.

In an action to restrain defendant from interfering with the water of a certain spring, etc., the following facts appeared : In 1852, defendant granted to C., under whom plaintiff claims, and who owned an adjoining farm, for the use of said farm "all the water of said spring which can be conducted through one-half inch lead pipe," to be laid by C. All the water of said spring came through a crevice or opening in a rock fifteen inches below the surface. C. boxed the spring and laid pipe therefrom as stipulated, and thus conveyed the water to his farm. There was another spring upon defendant's farm about thirteen feet from the one in question, the water from which he conveyed to his house, and which furnished an abundant supply therefor. In 1884 and 1888, plaintiff without the consent, and against the protests of defend-

ant, excavated the basin of his spring about twenty-three inches tapping the vein which supplied defendant's spring thus diverting the water therefrom. Defendant filled up the excavations so made restoring the spring to its original condition. *Held,* that the grant to C. had reference simply to the spring as it then was; that it was not intended by it to make defendant's whole farm servient for a supply of water that would flow through a one-half inch pipe; that plaintiff had no right to dig lower than was necessary to take the water flowing from the crevice in the rock, and by so doing he became a trespasser, and defendant had the right to fill in the excavations thus made; and so, that the complaint was properly dismissed.

*Johnstown Cheese Manufacturing Co.* v. *Veghte* (69 N. Y. 16); *Huntington* v. *Asher* (96 id. 604), distinguished.

*Furner* v. *Seabury* (59 Hun, 272), reversed.

(Argued May 4, 1892; decided October 4, 1892.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department, made February 3, 1891, which reversed a judgment in favor of defendant, entered upon a decision of the court on trial at Special Term and granted a new trial.

This was an action to restrain defendant from drawing or interfering with the water of a certain spring which plaintiff claimed he owned. A permanent injunction was asked for and also damages for injuries already sustained by reason of such alleged unlawful interference.

In August, 1852, the defendant and William Colson owned adjoining farms in Madison county. Upon the defendant's farm there was a spring of water, in which Colson, for the benefit of his farm, desired to acquire an interest, and then they entered into a written agreement, which, after reciting the existence of the spring upon the defendant's farm, and its location, provided as follows : " That the party of the second part, for and in consideration and agreement on the part of the first party, that he, the party of the second part, hereby agrees to convey the water from said spring in three-fourths inch lead pipe, which is to be laid under ground of sufficient depth to preserve said pipe from injury by frost or other causes. The party of the second part is to carry said water as above described into the meadow of the party of the first part

in consideration of the foregoing agreement on the part of the party of the second part; the party of the first part has hereby granted, bargained, sold, released and confirmed, and by these presents does grant, bargain, sell, release and confirm unto the said party of the second part, his heirs and assigns, all the water of said spring which can be conducted through one-half inch lead pipe; the party of the second part has the right to all the water which can run through said one-half inch pipe, said half inch pipe to be inserted at the termination of the three-fourths inch pipe as before described, to be constructed and kept in repair at the cost, charge and expense of the party of the second part, to have and to hold all and singular the same easement and privilege to the said party of the second part, his heirs and assigns forever as appurtenances belonging to his and their lands as aforesaid."

Colson's farm and his rights in the spring under the agreement came by successive conveyances to the plaintiff in 1867, and he has since owned the same. The lead pipes mentioned in the agreement were placed in the ground and connected with the spring, and the water of the spring was thus used by the plaintiff and his predecessors and by the defendant harmoniously, as provided in the agreement, until a few years ago, when the water of the spring being insufficient at times for both parties, defendant attempted to procure water from another spring about thirteen feet from the spring mentioned in the agreement, and the plaintiff, claiming that the defendant thus interfered with the water of the latter spring, commenced this action. The facts found by the trial court, so far as they are material, are as follows:

"That in the month of September, 1852, or thereabouts, the said Colson cleaned out the said spring and inserted in it a box sixteen inches deep upon the west side, and eighteen inches deep upon the other three sides; two feet three and a half inches long and twenty-three inches wide inside, thereby inclosing in said box water from said spring; and attached and inserted through said box into said spring a three-fourth inch lead pipe and continued said pipe under ground from

said spring through the defendant's land to the meadow of the defendant, as provided in said instrument; and at the termination of such three-fourth inch pipe attached to said pipe a half inch pipe and continued the same through the land of the defendant to and through the land of Colson to the house of said Colson.

"That in the fall of 1854 the defendant, with the permission and acquiesence of said Colson, attached a one-half inch lead pipe to the three-fourth inch pipe of said Colson about twenty rods from said spring, and upon the land of the defendant, and continued said pipe from where it was thus attached through his land to the house of the said defendant, for the purpose of obtaining water from said spring for use at his house; and that said pipe remained thus attached to said three-fourths inch pipe, until the same was detached therefrom by the defendant in the fall of 1886.

"That for the period of twenty years prior to the defendant detaching his one-half inch pipe from the three-fourths inch pipe of the plaintiff in the fall of 1886, as hereinbefore found, there had been a failure of water through the defendant's pipe, or an insufficient supply thereof to the defendant's house, so that the defendant at many times during said years was obliged to obtain water through said defendant's pipe to his house, sometimes for a period of two weeks, sometimes four weeks and sometimes six weeks, according to the dryness of the season; that from 1876 until the defendant detached his pipe from the pipe of the plaintiff in 1886, when it was dry there was a failure of water through the defendant's said pipe; that in 1876, in 1879 and in 1882 the water entirely failed to run through the defendant's said pipe for a period of six weeks or thereabouts, to the defendant's house, and the defendant by reason thereof was obliged to obtain water from his well.

"That at the time the defendant executed said instrument, dated August 20, 1852, granting to said Colson the privilege therein mentioned to water from the spring therein described, he, the defendant, was the owner of another spring located

about thirteen feet southeast from the spring in question; that such spring has ever since existed there; that the water came up out of the ground at said spring, and flowed off from the spring down the hill into the ravine below, uniting in the ravine with the water from the spring in question. That said spring is designated in the testimony as spring '**C.**' That since the execution of said instrument by the defendant to said Colson, there has been, and at the time of the execution thereof there was another spring owned by the defendant located on his land about thirty-three feet southwest from the spring in question, and designated in the testimony as spring ' B.' That in the fall of 1886 by reason of the repeated either entire failure of water through the defendant's pipe, or an insufficient supply thereof through said pipe thus attached to the plaintiff's said pipe, the defendant for the purpose of obtaining a sufficient supply of water to his house for household purposes and for the use of his stock, dug out his springs designated as springs ' C,' and ' B;' sank a barrel into spring ' C,' and a hollow log into spring ' B,' detached his one-half inch pipe from the said pipe of the plaintiff and connected a pipe with the pipe thus detached, continuing the same from the pipe thus detached to spring ' C,' and inserted such pipe into that spring. That he inserted a pipe at the same time into his spring ' B,' and connected that spring by an underground pipe with spring ' C.' That the said defendant at once after thus utilizing said springs 'C,' and 'B,' as hereinbefore found, obtained an abundant supply of water from these two springs through his pipe to his house; and which abundant supply continued until the plaintiff, in August, 1888, dug down the spring described in the instrument to Colson, when there was an entire failure of supply of water from the defendant's said springs to his house for several days; and that the supply of water therefrom continued to fail until late in the fall of said year, 1888; and that the failure of water from defendant's said springs through his pipe to his house was caused by the plaintiff digging down the spring described in the instrument to Colson, as hereinafter found."

That upon the west side of the spring mentioned in defendant's said instrument to Colson, there was at the time the same was executed, and still is, a solid rock which comes up to the surface of the ground; that fifteen inches below the top of that rock there was, and still is, an opening in the rock about the width of the box which has been inserted in the spring by Colson; that through this opening the water flowed, and that this aperture in the rock was the inlet to said spring, and that the source of said spring then was and still is the water which come out from under this rock fifteen inches below its top. That the box which was placed in said spring by Colson in 1852, and which box, or a similar one, remained there until taken out by the plaintiff in 1884, as hereinafter found, was two inches less in depth upon the west side against the rock than upon the other three sides; that the two inches upon the west side, or against the rock, was left off at the bottom of the rock in order to let the water come in from the inlet into the box, and that the box on this side came down just to the top of the opening in the rock and to said inlet to the spring; that said box was of sufficient size and depth, and answered the purpose of securing and inclosing the water which flowed from said spring through said aperture in the rock.

" That the said spring is composed of the water which flowed out from the hillside from the said aperture in said rock; and that the water thus flowing from said opening in the rock constituted said spring.

" That in 1884, the said plaintiff unlawfully took out the box then in said spring, and without the consent of the defendant, dug down eight inches below the bottom of the box thus taken out by him; digging a space of sufficient dimensions to insert a box two feet four and a half inches deep, two feet and ten inches long, and two feet ten inches wide; and then and there unlawfully, and without the consent of the plaintiff, inserted a box of those dimensions in the place of the box thus taken out by him.

" That in August, 1888, the said plaintiff unlawfully, and without the consent of the defendant, dug down at said spring

fifteen inches below where he had dug in 1884, and until he struck a solid rock; that he inserted at the bottom of this excavation the box that he had inserted in the excavation of 1884, and on the top of it put another box; that he then dug the ditch from the spring for several rods below it about one foot deeper than it had heretofore been, and attached his pipe into the box about a foot lower than it theretofore had been, and below the said spring; that the defendant, at the time the plaintiff was doing said acts, forbade the plaintiff doing the same; that the plaintiff, while doing said acts, asserted that he had the right to dig down fifty feet if he chose so to do. That all of said acts of the said plaintiff hereinbefore stated in this finding were unlawful acts on his part.

" That on the 15th day of January, 1889, the said defendant lawfully filled up the excavations made by the plaintiff at the said spring and below it in 1884 and 1888, restored the condition of said spring to the condition it was in at the time the plaintiff interfered with it in 1884, placed in said spring a box of the same dimensions and in the same manner that the box was in, which was taken out by the plaintiff in 1884, and on the eighteenth day of January thereafter, made to the plaintiff the following statement: Mr. Turner, I have filled up and restored the spring to the condition it was in when I conveyed to Mr. Colson the right to attach a pipe to the spring, and take the water from it through such pipe, and to the same condition the spring was in when you purchased the right of Colson, I deny your right to dig down this spring as you did, and attach your pipe to it where you did, after you had thus dug it down; that act of yours interfered with and cut off the water from another spring of mine near this one.

" I have made a hole in the box which I have put into the spring as I have restored it, so that all you have to do is to attach your pipe to the spring, as it now is, to obtain the water you are entitled to from this spring, and I admit your right to the water from this spring to the extent that such right was granted by my conveyance to Colson; and I claim I am in no manner interfering, in what I have done in restoring this spring, with

any right which you have as purchaser to attach a pipe to the spring and use the water therefrom which you are entitled to.

"Dated January 17, 1889."

"That on the 19th day of January, 1889, the plaintiff unlawfully dug down at this spring and below the same to the same depth that he had dug in August, 1888, and replaced in the excavation thus made by him the boxes that he had placed in the excavation made in August, 1888, and replaced the pipe as he had then placed it.

"That on the 8th day of April, 1889, the defendant lawfully filled up the excavation thus made by the plaintiff, precisely as he had done on the 15th day of January, 1889, and placed therein the same box that he had placed therein at that time and in the same manner; and again, on or about the 18th day of April, 1889, made the same statement to the plaintiff that he had made to him on the 18th day of January, 1889, informing him that he had again filled up and restored said spring as he had done the preceding January.

"That in the night-time, April 17, 1889, the said plaintiff again unlawfully dug down at the spring and below the same to the same depth that he had theretofore dug, as hereinbefore found; and replaced in the excavation thus made by him the boxes that he had placed in the excavations made by him, as hereinbefore found, and replaced the pipe as he had theretofore replaced it as above found; that after thus doing, and early in the morning of the same day, the plaintiff commenced this action against the defendant by the service of a summons and complaint therein, and an injunction order restraining the defendant, as set forth in said order, from interfering, as alleged by the plaintiff, with said spring, having obtained said injunction order the day preceding.

"That the acts of the plaintiff in digging down below the spring in question, in August, 1888, January, 1889, and April, 1889, had the effect of cutting off to an extent, the supply of water from the defendant's spring 'C,' which he was then using, and to the extent of causing an injury to the defendant by depriving him of the supply of water from his spring 'C,'

which he would otherwise have had from said spring; and that the effect thereof was to such an extent that, after the plaintiff had made the excavation hereinbefore found in August, 1888, and on the same day he made the same, the water from defendant's spring 'C' entirely failed to run through his pipe for several days and thereafter continued to thus fail until quite late in the fall of that year, to the extent 'that the defendant did not have a sufficient supply of water through said pipe, 'that until the plaintiff had made said excavation the defendant had invariably had a sufficient supply of water to his house through his pipe from said spring 'C.' That none of the acts of the defendant hereinbefore found to have been done by him were malicious acts, but were acts done by him in good faith and for the sole purpose of enabling him to obtain a needful supply of water from his two springs wherefrom he was obtaining the same as hereinbefore found.' And the trial judge refused upon the plaintiff's request to find the following facts: That the digging out of spring 'C,' by the defendant directly diverted the water from the plaintiff's spring, and that the plaintiff was thereby deprived of water from his spring for considerable periods of time, and that the direct result of the defendant's act in digging out spring 'C,' and connecting his pipe with the barrel placed therein and drawing water therefrom was to drain the plaintiff's spring and deprive him of the water thereof; and he found the following conclusions of law:

"That all of the acts of the defendant found to have been done by him, respecting his two springs in 1886, were lawful acts, and that he had the legal right to avail himself of the water from those two springs in the manner he did, and that in thus doing, he did not unlawfully interfere with any rights owned or acquired by plaintiff by virtue of the instrument executed by the defendant to William Colson, August 20, 1852.

"That the acts of the plaintiff in digging down at this spring in 1884, in August, 1888, on the 19th day of January, 1889, and on the 17th day of April, 1889, as found

in the eleventh, thirteenth and fifteenth finding of facts, were all of them unlawful acts.

"That the acts of the defendant in filling up the excavations made by said plaintiff at said spring and below it in 1884, 1888, and January 19th, 1889, and placing in said spring on the 15th day of January, 1889, and on the 8th day of April, 1889, a box of the same dimensions, and in the same manner that the box was in which was taken out by the plaintiff in 1884, and being the acts of the defendant stated in the twelfth and fourteenth proposed findings of facts, were all of them lawful acts.

"That the defendant is entitled to a judgment in this action dismissing the complaint therein, and dissolving the injunction therein, and that the plaintiff be adjudged to fill up the excavations made by him at said spring on the 17th day of April, 1889, and to replace in said spring a box similar to the one taken therefrom by him at the time he made said excavation and to restore said spring to the same condition that it was in at the time he commenced making the said excavation on the 17th day of April, 1889."

Upon these findings the defendant entered judgment against the plaintiff.

Further facts are stated in the opinion.

*D. W. Cameron* for appellant. The trial court decided correctly in holding that the acts of the defendant, found to have been done by him, respecting his two springs in 1886, were lawful acts; and that he had the legal right to avail himself of the water from those two springs in the manner he did; and that in thus doing he did not interfere with any rights owned or acquired by the plaintiff by virtue of the instrument executed by the defendant to William Colson August 20, 1852. (*Bliss* v. *Greeley*, 45 N. Y. 671; *Magoon* v. *Harris*, 46 Vt. 264.) The trial court did not err in deciding that the acts of the plaintiff in excavating below the spring in question, as he did in 1884, 1888 and 1889 were unlawful; and that the acts of the defendant in replacing said excavations and restoring

the spring in question to the same condition that it was placed in by Colson in 1852, and used by him and his grantors, including the plaintiff, from that time to 1884, were all of them lawful acts. (*Bliss* v. *Greeley*, 45 N. Y. 674.) The acts of the plaintiff in excavating below the spring in question, as he did in 1884 and 1888, were unlawful, and were acts of trespass upon the lands of the defendant. (Gould on Waters, § 291; 15 Penn. St. 164; 55 N. Y. 275.) The extent of the right of the plaintiff to use the spring in question had been established and fixed by a user of thirty-two years; twenty-one years of which was by the plaintiff. A period of thirty-two years was amply sufficient to determine what rights and privileges were necessary as incident to the expressed provisions of the grant. (*Roberts* v. *Roberts*, 55 N. Y. 275; *Tyler* v. *Cooper*, 47 Hun, 94.)

*John E. Smith* for respondent. The defendant, having granted a certain and specific quantity of water from the spring in question, was thereby precluded from doing any act or thing on his own land tending to interfere with or diminish the quantity of water to plaintiff within the grant. (*Whitehead* v. *Parks*, 2 H. & N. 870; *J. C. M. Co.* v. *Veghte*, 69 N. Y. 17.) If the defendant claims that the grant is vague and uncertain in its provisions, then the parties have, during the past thirty years and more, given every uncertain point an interpretation, and the agreements became definite and certain in those particulars by reason of the acts of the parties in the premises. (*Tyler* v. *Cooper*, 47 Hun, 94; 2 Washb. on Real Estate [3d ed.], 278; *Fisk* v. *Wilber*, 7 Barb. 395; *Bliss* v. *Greeley*, 45 N. Y. 671.)

EARL, Ch. J. As the order of reversal in this case does not appear to have been based upon any question of fact, we must assume that the judgment was reversed for some supposed error of law. (Code Civ. Pro. § 1338.) No complaint is made of the rulings of the trial judge upon the trial, and, therefore, if the findings of facts justify the conclusions of law the judgment of the Special Term should stand, unless some material finding

of fact is without any evidence to sustain it, or unless the trial judge refused, upon request of the plaintiff, to find some material fact sustained by uncontradicted evidence.

It is clear that the parties to the original agreement about the spring were dealing with some particular spring, and that the defendant did not intend absolutely to grant water which would fill or flow through a one-half inch pipe, and thus make his whole farm servient for that quantity of water. The language of the agreement clearly shows this. The particular spring is referred to and located. The evidence shows very clearly where the spring is and what its water was and where it came from. The water did not bubble up out of the ground, but flowed laterally out of a crevice in a rock, which was on the westerly side of the place dug out for the spring, about fifteen inches below the surface of the ground. There was solid rock at the bottom of the spring and water could not come up through that, and could come into the excavation made by the plaintiff only laterally. The finding of the trial judge, supported at least by some evidence, is "that the said spring is composed of the water which flowed out from the hillsides from the said aperture in said rock, and that the water thus flowing from the opening in the rock constituted said spring;" and there is no evidence that at the date of the agreement the spring was composed of any water but that coming from the crevice in the rock..

What is a spring? Properly, it is the water issuing by natural forces out of the earth at a particular place. It is not a mere place or hole in the ground, nor is it all the water that can be gathered or caused to flow at a particular place. A well is not necessarily a spring, nor is water which, by the expenditure of labor, can be gathered into a reservoir. The plaintiff had no right to dig into the earth and thus get water from other springs in which he had no right, although he took such water to the place where he had the right to get his water. His water came from the crevice in the rock where it had flowed for ages, and where it would continue to flow but for some change in the surrounding circumstances — change inci-

dent to some disturbance of the earth's surface, or the denudation of forests.

At the time of the agreement about the spring in 1852, there was another spring called spring " C," upon defendant's farm about thirteen feet distant from the former spring.  That spring owned by the defendant, he had the right to utilize, and the plaintiff had no right to take or draw the water therefrom.  The evidence shows and the finding is that in 1852, and ever afterward, the water issued out of the earth at that place, and flowed away upon the surface of the ground.  There is no conclusive or uncontradicted evidence that in digging out the earth for that spring, the defendant diverted or interfered with what, for brevity, we may call plaintiff's spring.  On the contrary, the defendant testified : " The putting a barrel into that spring (' C ') did not have anything to do with the Furner spring.  It did not lessen the water in the pipe at that spring. * * * The effect of Mr. Furner's lowering his spring was to cut off the water from my spring.  The effect of digging my spring was not to draw the water from his spring into it. The water that comes into his spring is right out from under a rock.  It is a kind of surface spring in his spring, and the vein of water that feeds my spring runs lower in the ground, boils right up from the bottom of the spring, and where he dug down he struck that vein and cut it off and then put in his box and packed clay around it and held it there."  There were some circumstances which confirmed this evidence, and the trial judge had the right to believe it.

There is a reasonable and probable explanation for the diminished quantity of water in plaintiff's spring in the gradual denudation of the forests surrounding the spring and thus letting in the rays of the sun to dissipate the sources of the supply.

The principles of law applicable to this case are not obscure or difficult.  The defendant had no right to interfere with the plaintiff's spring to his detriment, no right to deprive him of the water granted in the agreement of 1852, and this upon the facts found and the evidence appearing in the case he did not

do. The plaintiff had no right to dig down into the earth and drain the water from spring " C." He had no right to dig lower than was necessary to conveniently take the water from his spring, to wit: the water flowing from the crevice in the rock. In digging lower in the defendant's soil, he became a trespasser and the defendant had the right to fill in the excavation thus made.

The facts not only are against the plaintiff, but the authorities cited by his learned counsel do not aid him. He seems to place much reliance on these: *Johnstown Cheese Manufacturing Co.* v. *Veghte* (69 N. Y. 16) and *Huntington* v. *Asher* (96 id. 604). In the former case the defendant conveyed by warranty deed to plaintiff certain premises upon which was situated a cheese factory, " during the time it shall be used * * * for manufacturing cheese therein," also the use of the water for the purpose of such manufacture, as then conducted from springs on other lands of defendant not conveyed, with the right to enter thereon to construct and repair the pipes for conducting the water, and the right, in case the water from the springs should prove insufficient for the business at the factory, to go upon such lands to dig other springs and conduct other water courses to the factory. Defendant reserved the right to use water in a specified way and for a specified purpose, but it was provided that he should not use it so as to unnecessarily interfere with the use of the water at the factory. After the conveyance defendant unnecessarily made excavations and constructions upon his lands which had the effect to materially diminish the supply of water from the spring and to interrupt the business of the factory, which acts were persisted in after their effect had become apparent. The action was to recover damages and to restrain defendant from diverting the water, and it was held that defendant's acts were in derogation of his grant; that he was precluded thereby from doing any act on his land which should divert or diminish the supply of water flowing at the time of the grant from the spring to the factory, and that it was immaterial whether the supply was diminished by interference with

known water courses or by excavations which withdrew water from the spring by perculation or prevented its reaching the spring. There the whole of the land retained by the grantor was made servient to the grantee's water supply. Here a right in a particular spring only was granted. There the acts of the grantor were in derogation of this grant, interfered with the very right granted. Here the grantor disclaims any right or intent to interfere with the right grantde, and the findings and the evidence show that he did not interfere with it, and that his acts were not in derogation of his grant. The two cases are radically different.

In the case of *Huntington* v. *Asher* the familiar principle of law that the grant of an easement carries with it whatever is essential to its enjoyment was applied to the facts of that case. Here the plaintiff had the right to enter upon the defendant's land and repair his pipe, and to dig out and keep in repair his spring so that he could conveniently and usefully take the water therefrom. But he had no right to dig more than was necessary for that purpose, and certainly not for the purpose of taking water not belonging to the spring granted.

An authority more nearly touching this case is *Bliss* v. *Greeley* (45 N. Y. 671), where it was held that a limited and specific grant of the right to dig and stone up a certain spring and conduct the water therefrom through the grantor's land by a specified pipe to the grantee's house, with covenants of warranty, did not render the entire premises servient to the easement, and that the grantor might in such a case lawfully sink another spring but twenty-seven feet distant, although the effect was to render the first one useless.

Further discussion is not necessary. The facts, as we are bound to take them, are adverse to the plaintiff, and the law applied to those facts justify the judgment rendered at the Special Term.

The order of the General Term should, therefore, be reversed and the judgment of the Special Term affirmed, with costs.

All concur, except MAYNARD, J., not voting.

Order reversed and judgment affirmed.