J. G. DAVIDSON *v.* GILBERT M. VAUGHN.

February Term, 1945.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed May 1, 1945.

*Francis E. Morrissey* and *Guy M. Page* for the plaintiff.

*Asa S. Bloomer* for the defendant.

MOULTON, C. J. This is a bill in equity. The plaintiff seeks an injunction restraining the defendant from interfering with a pipe laid from a spring on the defendant's land, through which the plaintiff takes water for use on his premises. After hearing and written findings of fact the trial court dismissed the bill and the cause is here on the plaintiff's exceptions.

The parties are adjoining land owners. The spring is situated on a hillside and the stream issuing from it flows in a northerly direction for a distance of 120 feet and then sinks underground

and pursues a well defined channel through limestone rock, in a manner reminiscent of Alph, the sacred river, which, as the poet tells us, "ran through caverns measureless to man." After following its subterranean course for approximately 225 feet, it emerges from the face of an almost vertical ledge and thereafter goes on its way in the normal manner of a mountain brook.

During the autumn of 1939 the plaintiff was engaged in building a house or cottage on his land and, inferentially, with the consent of the defendant, constructed a cement catch basin or reservoir at the base of the ledge, which received the waters of the stream, and from which the plaintiff laid a pipe, in a ditch, 771 feet to the boundary of his property and thence to the house. Thereafter, on November 27, 1939, the parties entered into a written agreement, executed by each of them with the formalities of a deed of real estate, which recites that whereas the plaintiff is constructing a cottage on the Wilcox lot for which he desires to obtain a supply of water and that there is, on the defendant's land, a certain spring of water, now being used by the plaintiff, from which the defendant is willing to grant to the plaintiff the right to continue to take a part of the water for his use at his cottage, the defendant grants to the plaintiff "a perpetual right to tap said spring and the brook flowing therefrom . . . and to convey said water from said spring and brook by a suitable pipe laid in a ditch" to the plaintiff's cottage. It is agreed that the amount of water to be taken by the plaintiff from the spring and brook shall at all times be limited to one half the flow, but that he may use any part of the flow in excess of the one half granted for as long a time as the defendant does not utilize it, and that the plaintiff "shall have the right to lay, maintain and renew such a pipe from the spring or brook on the lands of Vaughn as will enable him to convey the water supply to his cottage, with the right of ingress and egress at all reasonable times over and upon the premises of Vaughn for such purposes." The agreement is expressed as binding upon the heirs, administrators, successors and assigns of the respective parties.

In May, 1940, before it was completed, the plaintiff's cottage was destroyed by fire, and the plaintiff erected another and slightly larger dwelling on another part of the land owned by him. To supply this building with water, he extended the pipe from a point near the site of the former cottage to the new house, no part of

the extension being upon the defendant's land. Since the new house stands on a higher elevation than the former one, the plaintiff, desiring a greater pressure of water than could be obtained from the reservoir at the ledge, in June 1940 built another reservoir or "spring house" on the brook 290 feet farther up the hill from the ledge, and 52 feet below the spring, and laid a pipe from this "spring house" to connect with the pipe already leading from the reservoir across the defendant's land. Later, he laid another pipe from the "spring house" to the spring itself. He also constructed a chromium plant on his property, for temporary use, and connected it with the pipe laid to his new house.

The defendant objected to the erection of this "spring house" and removed the pipe leading from it to the reservoir at the base of the ledge. It is to prevent the repetition of this act that the injunction is sought.

The plaintiff contends that under the agreement he has the right to take his share of the water directly from the spring and from any part of the brook that issues from it; the defendant, that the right is limited to the place where the water was being taken at the time the instrument was executed, and only for the purpose of supplying the plaintiff's cottage then being erected and therefore could not be extended to any other place on his property. No claim is made that the plaintiff has taken or intends to take more water than the instrument allows him.

 The agreement, which is in effect a deed, must be construed so as to give effect to the intention of the parties if it can be gathered from the language used when interpreted in connection with, and in reference to, the purpose sought to be accomplished and the nature and condition of the subject matter of the grant at the time the instrument was executed. *Hill* v. *Bell,* 111 Vt 131, 135, 11 A2d 211; *Parrow* v. *Proulx,* 111 Vt 274, 277, 15 A2d 835; *Freeguard* v. *Bingham,* 108 Vt 404, 406-7, 187 A 801; *Kennedy* v. *Clark,* 103 Vt 349, 353, 154 A 577; *Vermont Kaolin Corp'n.* v. *Lyons,* 101 Vt 367, 376, 143 A 639; *Cutler Co.* v. *Barber,* 93 Vt 468, 473, 108 A 400. If the instrument is clear and unambiguous it is to be given effect according to its language, for the intention and understanding of the parties must be deemed to be that which their writing declares. *Stratton* v. *Cartmell,* 114 Vt 191, 42 A2d 419; *In re Beach Est.,* 112 Vt 333, 335, 24 A2d 340; *Kerr & Elliott* v. *Green Mtn. Ins. Co.,* 111 Vt 502, 510, 18

A2d 164; *Freeguard* v. *Bingham, supra*; *Johnson* v. *Hardware Mutual Ins. Co.,* 108 Vt 269, 281, 187 A 788. The meaning is then a question of law, and the intention so manifested cannot be altered by evidence or findings of extraneous circumstances. *Freeguard* v. *Bingham, supra*; *Greene* v. *Helme,* 94 Vt 392, 396, 111 A 557; *Vermont Marble Co.* v. *Eastman,* 91 Vt 425, 444, 101 A 151. It is only when the meaning is uncertain that resort may be had to the well settled, but subordinate rules of construction, to be treated as such and not as rules of positive law. *Johnson* v. *Barden,* 86 Vt 19, 29, 83 A 721, Ann Cas 1915 A 1243; *County of Addison* v. *Blackmer,* 101 Vt 384, 389, 143 A 700.

██ The description of the right conveyed, "a perpetual right to tap said spring and brook," is clear and unequivocal. It is not limited as to place or method. The verb "tap" is defined in Webster's New International Dictionary as "to let out or cause to flow by piercing . . . to open or break into so as to extract something . . . to pierce so as to let out, or draw off, a fluid." Taking this language in its common and usual meaning (*Bass and Co.* v. *Wilton Woolen Mills,* 117 Me 314, 104 A 160, 161), the plaintiff became entitled to take the water not only from the brook, but from the spring itself. Nor was he precluded by the fact that he had previously taken water from the reservoir first constructed, for his subsequent acts were not an extension or enlargement of the right granted. *Willard* v. *Stone,* 253 Mass 555, 149 NE 681, 684. *Arnold* v. *Farr,* 61 Vt 444, 447, 448, 17 A 1004, 1005, is in point. In that case the deed to the defendant conveyed "one undivided sixth part of a certain spring and the aqueduct which conveys the water therefrom . . . with full liberty to take such portion of the water running in said aqueduct from such point in said aqueduct as shall be most convenient and conduct the same to his premises." The question was whether the defendant had the right to lay an independent pipe to the spring. It was held that he was not limited to the particular means of taking his share of the water mentioned in the deed, but that he could take it directly from the spring, and that, since the grant was clearly defined, "the fact that the defendant and his grantor for many years drew their shares from the stone aqueduct is not conclusive against the defendant's right to take it from the spring by another aqueduct. . . ." It is true that the deed conveyed an undivided part of the spring, while in the present case the right to tap the spring and brook is the subject of

the grant. But our rule is that the grant of a right to take water from a stream or spring conveys a right in the land itself, and is something more than an easement; it is an interest partaking of the nature of a *profit á prendre*. *Clement* v. *Rutland Country Club*, 94 Vt 63, 66, 108 A 843; *Lawrie* v. *Silsby*, 76 Vt 240, 251, 56 A 1106, 104 Am St Rep 927; *Village of Brattleboro* v. *Yauvey*, 101 Vt 314, 318, 143 A 295; and see *Payne* v. *Sheets*, 75 Vt 335, 345, 55 A 656. A right in the land includes a right in the spring to the extent specified in the conveyance. *Hill* v. *Shorey*, 42 Vt 614, 619. So the distinction above noted is not important.

■ The defendant says that the place where the water issues from the face of the ledge and flows into the reservoir there situated is a "spring" according to the definition in *Magoon* v. *Harlow*, 46 Vt 264, 271, that "a spring of water is a place where water by natural forces usually issues from the ground." The "natural force" here apparent is the force of gravity. The flow of water is the brook itself, which has not lost its identity because it has followed a definite and ascertained subterranean channel for a part of its course. *Heininger* v. *McGinnis*, 131 Va 70, 75, 108 SE 671; *Willis* v. *Perry*, 92 Iowa 297, 60 NW 727, 26 LRA 124, 126; *Huberg* v. *Merkel*, 117 Wis 355, 94 NW 354, 62 LRA 589, 592, 98 Am St Rep 933. And see *Wheelock* v. *Jacobs*, 70 Vt 162, 164, 40 A 41, 43 LRA 105; and also cas. cit. in annotation 67 Ann St Rep 659 ff. A spring exists where the water has its living source and this is the meaning of the language of *Magoon* v. *Harlow*, *supra*, as clearly appears from that opinion. See also *Clement* v. *Rutland Country Club*, 94 Vt 63, 69, 108 A 843. It is not all the water than can be gathered or caused to flow at a particular place. *Furner* v. *Seabury*, 135 NY 50, 31 NE 1004, 1007. There is nothing in the findings of fact that implies that the water flowing into the reservoir at the ledge is anything else than the water of the brook, augmented, perhaps, by surface water from the vicinity.

■ The defendant calls attention to the recitals in the preamble to the instrument that "a certain spring of water" on his land is "now being used by the plaintiff" for which he is willing to grant to the plaintiff the right "to continue to take a part of the water," and argues that these expressions should be taken to show the intention and understanding of the parties that only the reservoir at the base of the ledge was to be used. While a recital in the preamble or elsewhere in a deed or contract may be consulted in aid of

the interpretation of an ambiguity in the instrument, it cannot control the dispositive or operative portion when this is clear and definite, or create a doubt which does not otherwise exist. *Peters v. McLaren,* 218 F 410, 416, 134 CCA 198; *Wilson v. Towers,* 55 F2d 199, 200; *Augusta Land Co.* v. *Augusta Ry. etc. Co.* 140 Ga 519, 523, 79 SE 138; *Ontelaunee Orchards* v. *Rothermel,* 139 Pa 44, 11 A2d 543, 545-6; *Bodwell Granite Co.* v. *Lane,* 83 Me 168, 21 A 829, 830; *Pawtuxet Baptist Soc'y.* v. *Johnson,* 20 RI 551, 40 A 417, 418; *Chicago Daily News* v. *Kohler,* 360 Ill 351, 196 NE 445, 451; *Williams* v. *Barkley,* 165 NY 48, 58 NE 765, 767. And see also *Townsend* v. *State,* 147 Ind 624, 636, 47 NE 19, 37 LRA 294, 62 Ann St Rep 477, 485; *Coverdale* v. *Edwards,* 155 Ind 374, 382, 58 NE 495, 498. "The granting clause as to the interest conveyed will prevail over interlocutory recitals." *St. Clair Springs Hotel Co.* v. *Balcomb,* 215 Ala 12, 15, 108 So 858, 861. Here the granting clause is subject to no uncertainty, and, in accordance with the rule to which we have already referred, the intention of the parties must be deemed to be that which the language of their written instrument declares.

It is also argued that the findings show that the parties have placed a practical construction upon the instrument, the basis for the contention being a finding that, in November, 1940, after the defendant had complained of the erection of the new "spring house" by the plaintiff, the latter said to him: "What do you want me to do? If you want me to give you a little money for this lot I will do it, or do you want me to blow the spring house up?" To which the defendant replied that: "We will get together some way. We have done business before and we ought to be able to do business again." But without considering whether the finding has the effect claimed for it, it is enough to point out that the rule invoked is applicable only when the meaning of the instrument is doubtful, and not where, as here, the meaning is clear and obvious. *Kennedy* v. *Rutter,* 110 Vt 332, 342, 6 A2d 17; *Blair* v. *Blair,* 111 Vt 53, 60, 10 A2d 188; *Bragg* v. *Newton,* 98 Vt 102, 105, 126 A 494; *Hartness* v. *Black,* 95 Vt 190, 198, 114 A 44; *Clarke* v. *Mylkes,* 95 Vt 460, 463, 115 A 492; *White* v. *Amsden,* 67 Vt 1, 10-11, 30 A 972.

The question whether the taking of the water was limited to use at the cottage that was in process of building at the time that the instrument was executed does not appear to have been put in

issue by the defendant's answer. According to the findings his objection was merely as to the place where the plaintiff was taking it, and not as to the purpose for which it was taken and he does not seem to have denied that the plaintiff had the right, under the agreement, to use the reservoir at the ledge as a source of supply for his new house.

It is not an abuse of the water right to pipe the flow to the new house, or to the chromium plant. *Bissell* v. *Grant,* 35 Conn 288, 298. A perpetual right to take water is inconsistent with the supposition that it can be used only in a certain building, for no building can be expected to stand forever. The fact that the new house is somewhat larger than the old one (it has one more sleeping room and one more bath room than the other) does not affect the matter. The amount of water to which the plaintiff is entitled is fixed by the agreement. So long as he takes no more than this, and, as we have seen, there is no claim that he has or is about to do so, he may enlarge the method of using it. *Haldiman* v. *Overton, supra,* pp. 482-3. To use the analogy of an easement the burden upon the servient estate is not increased, and no new or additional burden is imposed thereon, *Kelbro, Inc.* v. *Myrick,* 113 Vt 64, 69, 30 A2d 527; *Hopkins, the Florist* v. *Fleming,* 112 Vt 389, 391, 26 A2d 96, 142 ALR 463; *Dernier* v. *Rutland Ry. L. and P. Co.,* 94 Vt 187, 194, 110 A 4.

There was error in the decree dismissing the bill of complaint.

*Decree reversed. It is ordered, adjudged and decreed that the defendant, his heirs, administrators, successors, assigns, agents and servants be and they are hereby enjoined and restrained from removing or interfering with the pipe laid by the plaintiff from the spring and brook upon the defendant's land to the land of the plaintiff, and from interfering with the plaintiff, his heirs, administrators, successors, assigns, agents and servants, in maintaining and renewing said pipe. Let the plaintiff recover his costs.*

## ON MOTION FOR REARGUMENT

MOULTON, C. J. The first reason that the defendant gives for a reargument of this cause is that we have misconstrued the agreement between the parties. It is argued that the grant of "a perpetual right to tap said spring and the brook flowing therefrom" refers to the recital in the preamble that "there is situated (on

lands of Vaughn) a certain spring of water now being used by Davidson and from which spring Vaughn is willing to grant Davidson the right to continue to take a part of the water." Other instances of the use of the phrase "said spring" are claimed to have the same effect. As we have pointed out in the opinion in this cause, such a recital cannot control the dispositive or operative part of the instrument when, as here, it is clear and unambiguous; and that there is only one spring on the land, from which and from the brook flowing therefrom the right to take water is granted. Indeed, the spring was "being used by Davidson", although he took the water from it as it was collected in the catch basin. After consideration of the defendant's argument on this point, we see no reason for changing the views already announced.

It is also said that we have inadvertently failed to observe that the question whether the taking of the water was limited to use at the cottage was put in issue by the defendant's answer, and our attention is called to paragraphs 2 and 4 of the bill of complaint and to the corresponding paragraphs of the answer. Paragraph 2 alleges an oral agreement, entered into before the written agreement, that the plaintiff could take and use such water as he needed for his requirements, in consequence of which he expended substantial sums of money in the installation of a water system for that purpose. Paragraph 4 alleges that after the execution of the written agreement the plaintiff, at his own expense, installed further improvements to the spring to obtain the needed water. The answer to paragraph 2 is a denial of its allegations. The answer to paragraph 4 is that the defendant neither admits nor denies its allegations on the ground that they are immaterial, and leaves the plaintiff to his proof; and it is denied that there is any connection between the rights claimed by the plaintiff under the written agreement and the allegations of paragraph 4 which can justify what the defendant asserts to be the trespass of the plaintiff.

These pleadings are not sufficient to raise an issue of a loss of rights under the agreement because the water has been used elsewhere than at the cottage. The answer amounts to nothing more than a denial that the plaintiff expended money in the installation and improvement of the water system. It is not a compliance with the settled principle that a defendant, when he makes answer to a bill in equity, must set up all the various grounds of defense

upon which he intends to rely. *Warren* v. *Warren,* 30 Vt 530, 531; *White* v. *Amsden,* 67 Vt 1, 13, 30 A 972.

Moreover the record fails to disclose that the issue was brought into the case at the trial by the mutual acquiescence of the parties. See *Lemieux* v. *City of St. Albans,* 112 Vt 512, 516, 28 A2d 373. The defendant did not testify and called no witnesses, but rested his case upon the cross-examination of the plaintiff and the latter's witness. Much of this testimony related to uncontroverted matters concerning the construction of the water system during the time the cottage was being built, and after the fire, to the new house. One question, however, was excluded upon objection by plaintiff's counsel on the ground that it was immaterial whether the water was taken to one building or to the other. Thus it appears that the Court, as well as the plaintiff, did not regard the question of a limitation of the right to use the water as being in issue, but considered the allegation of a trespass in the defendant's answer to refer to the taking from the spring, instead of from the reservoir at the ledge. And it will be observed that in spite of the fact that the issue was not made, we took pains to point out in our opinion, that the use of the water at the new house was not a departure from the granted right.

The defendant asks that, if his motion for a reargument is denied, the cause be remanded for further proceedings. No sufficient reason for granting this request is made to appear.

*Motion for reargument denied. Let full entry go down.*