## Alpenwald Village, Inc. v. Town of Readsboro

[687 A.2d 481]

No. 96-045

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed November 15, 1996

*Lon T. McClintock* of *Jacobs, McClintock & Scanlon,* Bennington, for Plaintiff-Appellee.

*Robert E. Woolmington* of *Witten, Saltonstall, Woolmington, Bongartz & Campbell, P.C.,* Bennington, for Defendant-Appellant.

■ **Johnson, J.** This case centers on several lots in a residential condominium development that are owned by defendant Town of Readsboro. After taking title to the properties at its own tax sale, the Town failed to pay the annual fees assessed on the properties by plaintiff Alpenwald Village, Inc. (AVI), the corporation that manages the condominium development. AVI brought this action to collect the past-due fees, plus interest, costs and attorney's fees. The Town moved for summary judgment, arguing that AVI could collect past-due assessments under the homeowner covenants only by foreclosing its liens on the properties. The trial court denied the motion for summary judgment, but granted the Town's request for permission for interlocutory appeal on the following certified question:

> Assuming that the Declaration of Protective Property Rights creates a common scheme for a subdivision and runs with the land, does the purchaser of an Alpenwald lot at a tax sale, who accepts a tax-collector's deed, become personally liable for payment of any valid lot assessments thereafter levied, or is the enforcing agent's remedy for failure to pay such assessments limited to an action of foreclosure?

We conclude that the purchaser of an Alpenwald lot at a tax sale who accepts a tax-collector's deed does become personally liable for payment of any valid lot assessments thereafter levied.

The Alpenwald Development is a planned residential subdivision located in the Towns of Stamford and Readsboro. Each owner of an Alpenwald lot is a member of AVI and is subject to covenants (entitled "Declaration of Protective Property Rights") that include a provision requiring owners to pay annual assessments to AVI to cover the costs of maintaining the common lands, roadways and facilities. Since taking possession of the lots, the Town has never paid the annual fees assessed by AVI. For purposes of this appeal, the parties do not contest the validity of the annual assessments, but dispute only whether the covenants permit AVI to bring this action against the Town.

Central to the appeal are paragraphs 7 and 8 of the covenants, which state in relevant part:

(7) CHARGES: In order to maintain and improve the ALPENWALD DEVELOPMENT . . . the owner of each Lot shall, on the first day of May in each year . . . pay to the REVERSIONARY OWNER, or its successors and assigns . . . the annual payment in the amount hereinafter recited. Such annual payment shall be a lien on each Lot, and if not paid by June 15th of each calendar year, the REVERSION-ARY OWNER, or its successors and assigns, may enforce said lien, as hereinafter provided, as and when the REVER-SIONARY OWNER shall elect . . . .

(8) REVERSIONARY OWNER:

. . . .

[I]n the event of a breach of any of the covenants, conditions, reservations, or restrictions hereby established, the REVERSIONARY OWNER shall have the right to enforce or remedy such breach or enforce such lien as hereinbefore provided by appropriate legal proceedings. As to each Lot owner in such premises these covenants, conditions, reservations, and restrictions shall be covenants running with the land . . . .

The Town argues that paragraphs 7 and 8 at most *imply* a personal right of action, but that such restrictions cannot be extended by implication to include options not clearly expressed, relying on *Fassler v. Okemo Mountain, Inc.*, 148 Vt. 538, 542, 536 A.2d 930, 932 (1987).

We agree with the Town's general proposition about the need to express deed restrictions clearly, but we disagree that it applies to the covenants in the present case. The language of the paragraphs in question is not ambiguous. Paragraph 7 allows AVI to "enforce said lien, *as hereinafter provided*, as and when [AVI] shall elect." (Emphasis added.) If the phrase "enforce said lien" stood alone, without reference to a subsequent provision, the Town might well be able to argue ambiguity. But the "hereinafter provided" explanation appears in the very next numbered paragraph of the covenants, which permits AVI to "enforce or remedy such breach [of the covenants] *or* enforce such lien as hereinbefore provided by appropriate legal proceedings." (Emphasis added.) Thus, paragraph 8 states plainly that AVI has the option of suing to "remedy such breach" or to "enforce such lien." The words "as hereinbefore provided" link paragraphs 7 and 8 closely together, clarifying that the lien enforcement option is the same option described in paragraph 7.

*Fassler* does not suggest a different result. That case recites the standards for construing arguably ambiguous covenants, but states that "'[i]f the instrument is clear and unambiguous it is to be given effect according to its language, for *the intention and understanding of the parties must be deemed to be that which their writing declares.*'" 148 Vt. at 542, 536 A.2d at 932 (quoting *Davidson v. Vaughn*, 114 Vt. 243, 246, 44 A.2d 144, 146 (1945)). We held that the covenant in *Fassler* was not ambiguous and noted with respect to the parties' numerous citations from other states that "[t]hese cases, almost without exception, instruct that each case must be determined on its own merits and that the language of the instrument controls." *Id.* at 543, 536 A.2d at 933.

▮ The Town cites treatises containing model documents dealing with legal relationships between condominium developments and their homeowners and spelling out the personal obligation of owners to pay assessments. The Town's contention appears to be that the covenants in the present case fall short by comparison, since they do not directly speak of "the personal liability of the owner." Though that phrase is not found in the covenants, paragraph 7 describes an obligation to pay assessments, and paragraph 8 creates the right to remedy a breach of that obligation. A homeowner could not have purchased a lot from Alpenwald, claiming ignorance of the right of the reversionary owner (here AVI) to remedy a breach of the assessment obligation via lien foreclosure or personal enforcement — again, a distinction made clear in paragraph 8. Nor does the Town support its suggestion that successors in interest to original owners are not on the same notice as their predecessors.

The Town recites numerous public policy arguments, most of which proceed from the principle that enforcing vague covenants is harmful to the public weal. These arguments, however, depend for their validity on the proposition that the covenants in this case are vague — essentially the principal argument advanced by the Town and one that we do not accept.

The Town also argues that "scarce public funds in a tax-poor community" should not be allocated to assessments on property the Town has acquired at a tax sale. Apart from the silence in the record concerning the Town's financial condition, Vermont law does not lend support to the argument. "Apartment owner" is defined in the

Condominium Ownership Act, 27 V.S.A. § 1302(2),[*] in a manner that does not exclude any class of owners. Moreover, 27 V.S.A. § 1323(b) states that upon foreclosing on a first mortgage, the acquirer of title shall not be liable for assessment arrearages prior to obtaining such title, and that such unpaid share of common assessments "shall be considered common expenses collectible from all of the apartment or site owners including the acquirer." Section 1323(b) does not apply to towns acquiring title at tax sales, but the provision does illustrate that the Legislature was aware of instances where new ownership triggered by an owner's default on a debt should be treated as a special case and equitable rules applied to the obligations of that ownership. Those equitable rules do not excuse foreclosing banks or their assigns from paying assessments that come due after the foreclosure.

The Town complains that in the absence of foreclosure, which it states it would not oppose, it is essentially bound to continue to pay assessments to AVI as a member of the development, with no end in sight, so long as the lots it owns have little market value. The Town appealed from the denial of a motion for summary judgment, and there is nothing in the record at this stage that sheds light on options that may be available to the Town as an owner solely in pursuit of tax revenues. The only question before this Court relates to the proper interpretation of the covenants. The trial court has not yet had the opportunity to make findings or to frame an appropriate order. It is therefore premature to consider the Town's concern that its assessment obligation will be permanent, in the absence of a foreclosure action by AVI or an increase in the value of the properties it acquired via tax sale.

Moreover, the Town does no more in its brief than to mention the dilemma, presenting no further legal argument. Should the issue come before us again after remand, it will be incumbent upon the Town to demonstrate in fact that it has no options in the absence of a foreclosure action by AVI, why its position mandates judicial relief, and what the nature of that relief should be.

In sum, the covenants at issue in this case expressly provide that AVI may enforce their terms directly against each defaulting lot owner, including commencing an in personam suit against the Town as purchaser at a tax sale.

---

[*]The phrase "apartment owner" may seem inapposite on the present facts. It is, however, a term of art in 27 V.S.A. § 1302(2) and includes fee simple owners of apartments or "any other estate in real property recognized by law of the common areas and facilities in the percentage specified and established in the declaration." *Id.*

*The certified question is answered as follows: the purchaser of an Alpenwald lot at a tax sale, who accepts a tax collector's deed, becomes personally liable for payment of any valid lot assessments thereafter levied.*