DeVORE, J.
*610 Petitioner appeals from a judgment that denied his petition under ORS 166.274 for relief from a firearm restriction resulting from a robbery conviction.[1] He argues that the trial court erred because he established that he does not pose a threat to the safety of the public or to himself. We agree and reverse.
We review the denial of a petition for relief from Oregon's firearms bar de novo on the record. ORS 166.274 (10)(a). Given that standard of review, "we independently assess and evaluate the evidence and reweigh the facts and reassess the persuasive force of the evidence." Dept. of Human Services v. D. W. M. , 296 Or. App. 109, 112, 437 P.3d 1186 (2019). At the same time, "we give considerable weight to the findings of the trial judge who had the opportunity to observe the witnesses and their demeanor in evaluating the credibility of their testimony." Fitts v. Case , 243 Or. App. 543, 552 n. 3, 267 P.3d 160 (2011). As we explain later, the trial judge did not make credibility findings in this case.
In 1997, petitioner pleaded guilty to two of three counts of bank robbery under 18 USC section 2113(a) for committing unarmed robberies at two banks and one credit union. The federal trial court sentenced him to 35 months in prison, two years of supervised release, and payment of $ 6,933 in restitution. Petitioner served his term of imprisonment without issue. As conditions of supervised release, he was required to submit to random drug testing and warrantless searches of his person and property. He was also ordered not to commit another crime and not to possess a firearm. Petitioner satisfied the conditions of his supervised release without incident. Over time, he paid the restitution sum in full. After satisfying those conditions, his probation officer sent him a letter in 2002, saying:
"Congratulations on a job well done. *** Please be advised, however, that the right to bear a firearm is a right which cannot be returned to you at this time due to budget constraints by the Bureau of Alcohol, Tobacco, and Firearms."
*745 *611 (Boldface in original). Since his felony offenses in 1997, petitioner has been prohibited from owning or possessing a firearm.
In 2017, 20 years after the offenses, petitioner petitioned the trial court pursuant to ORS 166.274 for relief from the firearm restriction. In relevant part, that statute provides:
"If the petitioner seeks relief from the bar on possessing or purchasing a firearm, relief shall be granted when the petitioner demonstrates, by clear and convincing evidence, that the petitioner does not pose a threat to the safety of the public or the petitioner."
ORS 166.274(7). To support his petition, petitioner attached his own affidavit, a copy of the letter from his probation officer, a copy of the judgment of conviction, and four letters from friends, family, and neighbors.
In response, the sheriff's office submitted a trial memorandum that recited petitioner's short criminal history, relevant statutes, and the statutory standard for granting relief. The sheriff's office took no position on whether petitioner could satisfy his statutory burden to show that he does not pose a threat to himself or others.
In the hearing before the trial court, three witnesses testified-petitioner, his son, and his daughter-in-law. The testimony was consistent with the petition and supporting materials. All testified that petitioner is remorseful about his crime, that petitioner had successfully completed his prison sentence and probation, that he has been a law-abiding citizen since 1997, and that he has lived a peaceful and honest life for the past 20 years.
Petitioner explained that he is 66 years old and wants to go hunting with his son and his family. He had been a rancher and a logger, but he is now retired and disabled. Due to his health problems, he lives in Portland with his son and daughter-in-law. He is a liver cancer survivor and has had "degenerative disk disease in [his] lower back" for years. He also suffers from osteoporosis. When asked which medications his physician has prescribed for his health conditions, he stated that he takes "calcium and things like that"
*612 as well as Oxycodone "a couple of times a week" for his back pain but that he "rarely use[s] all [his] medication" because he does not "like taking pills." He said that he does not "get high on it" and that he would not use firearms if he were drinking or taking his medications.
Petitioner recounted the crimes that he committed 20 years before. The woman he was dating at the time in 1997 was behind on her mortgage payments and needed "several thousand dollars to keep living in her home." He intended the robberies to help her with payments necessary to keep her home. He committed each robbery using a note, which essentially read, " 'This is a robbery. *** Give me the money[.] *** Nobody will get hurt.' " He did not use any weapons and did not hurt anyone physically.
During the final robbery, petitioner said that he had noticed that the bank teller looked "very scared" and he "felt awful about it." He "had no intention to hurt anybody," and he "sure as hell didn't want to scare anybody that bad." Seeing that, petitioner "knew what [he] was doing was wrong." That day, he turned himself in to the police. He testified:
"I thought it would be better for all concerned, I sure as hell didn't want to get shot at or nothing. So I left the car, went up an alley, and I went into a tavern and I made a phone call from the tavern there to the Spokane police department and told them where I was. And they told me to stay there and they would come and get me."
When the officers arrived, he met them in the parking lot and "followed their instructions completely." He said that he regrets his prior actions "every day of [his] life" and that he "wish[es] [he] could take it back."
After serving his sentence, petitioner worked to pay his restitution. The obligation took about eight years because it was difficult to find work, but he made sure to "make the payments religiously every month" even if he could afford only the minimum payment. He has not had any other arrests or convictions in the 20 years since the offenses.
Petitioner testified that hunting has always been an important part of his life. He had hunted since he was *613 12 years old when his *746 grandfather taught him how to hunt. He wishes to go hunting with his son, particularly before his health deteriorates further and prevents him from hunting. He thinks that he has about three to five years before that happens.
Petitioner stressed that he is not a violent person and that he would not pose a threat to himself or others if his gun rights were restored. He plans to use firearms responsibly by hunting with his family and practicing target shooting.
Petitioner's son described his father as an honest and peaceful man. Although he has seen his father in challenging situations, his father has never acted violently. He agreed that his father does not pose a threat to himself or to others. He testified that he would like to be able to have his father join him target shooting like they did when both were younger. Petitioner's son hunts every weekend during deer season, one week out of the year for elk, and turkey hunting every spring. He would like his father to join the family in those outdoor activities.
Petitioner's daughter-in-law testified that she has never seen petitioner act in a violent manner and that she has no reservations about petitioner owning or possessing firearms. She shared her husband's desire to have petitioner join the family hunting and camping.
Petitioner offered letters of friends. One wrote:
"I've had the pleasure of knowing [petitioner] for the last 10 years. He lived on the property adjacent to a recreational parcel I own in Stevens County, WA during that time.
"I've found [petitioner] to be a responsible and trustworthy neighbor and friend. I have trusted him with many things, (for instance, he has a key to my cabin) and he has never let me down.
"I know [petitioner] is remorseful and embarrassed for his crime in the past and can say with complete confidence he would never break the law again.
"I would be happy to provide further on my opinion of [petitioner]."
*614 A neighbor wrote:
"I've known [petitioner] for about 8 years. I own a 10-acre parcel near the property he lived on in Stevens County, WA.
"[Petitioner] has always been a great neighbor and very polite, nice man. One thing that comes to mind is when [petitioner] found some kittens in the woods that had been abandoned by their mother. He took care of them until they were big enough to be adopted out.
"[Petitioner] is a good man, and I know he will not repeat the mistakes of his past."
Petitioner's counsel argued that petitioner met his burden and that the court should grant his petition.
The sheriff's office did not oppose petitioner's evidence, did not submit any evidence, and did not offer any witness testimony. Counsel for the sheriff's office observed, "I will leave it to the Court without much argument, if any, from the sheriff's office on whether or not petitioner has met his burden." The sheriff's office did argue that the underlying offense was a serious felony which "should go into consideration, but recognizing it was twenty years ago." It cautioned the court that "there's no evidence to suggest that [petitioner is] abusing" his prescribed opiates "but it does give some pause to think about restoring the rights of somebody that is, in fact, using something that might impair their judgment. But with that said, I will leave it to the Court on whether or not he's met his burden."
Before deciding, the court requested additional information from petitioner on two points: (1) describing whether he had used a firearm in the robberies and (2) clarifying his use of Oxycodone. In response to the first inquiry, petitioner referred to his testimony and attached additional documents from the case 20 years ago. The documents showed that he did not use a firearm in the commission of the crimes. As to the second inquiry, petitioner referred to his testimony describing his medication, the prescribed doses, and his assurance that he takes the medication as prescribed. There was no evidence that he abuses the medication.
*747 *615 Upon that record, the trial court denied the petition. The court's order stated:
"The Court, having heard arguments, after further consideration of the pleadings and supplemental information and being fully advised, finds the petitioner did not prove by clear and convincing evidence pursuant to ORS 166.274 that petitioner has been rehabilitated and does not pose a threat to the safety of the public or the petitioner."
The court did not make specific findings of fact nor any express statements about the credibility of petitioner or the other witnesses. With no further explanation, we are not convinced that the court made implicit findings as to the credibility of petitioner or his witnesses. The court's order does not necessarily imply that the court disbelieved the facts recounted by petitioner or the witnesses, so much as that the court was not persuaded by clear and convincing evidence that petitioner posed no risk after having committed robberies 20 years before.
On appeal, petitioner assigns error to the trial court's denial of his petition. He argues that he is an "honest, caring, peaceful, law-abiding outdoorsman who is devoted to his family, who acknowledges that he made a mistake, who has paid for that mistake, and who has earned the respect and trust of his family, friends, and neighbors." The sheriff's office argues that petitioner failed to carry his burden that he does not pose a threat to the safety of the public or himself.
Undertaking de novo review, we conclude that petitioner demonstrated by clear and convincing evidence that he does not pose a threat to the safety of the public or himself. Petitioner's crimes occurred 20 years ago. He fully served his term of imprisonment and successfully completed his supervised release obligations. He worked diligently for eight years to pay the restitution sums in full. He shows remorse for his mistakes, regretting his prior actions "every day of [his] life." Over the following two decades, he has not had an arrest or conviction for any crime. His family and friends describe an honest, peaceful man. His reason for possession and use of firearms is to facilitate his involvement *616 with his family in target shooting, hunting trips, and outdoor recreation.
Notwithstanding serious misjudgment 20 years ago, petitioner has established that he does not now pose a threat to the safety of the public or to himself. For that reason, the trial court erred when it denied petitioner relief under ORS 166.274(7) from the firearm restriction attendant to the conviction for the past offenses.
Reversed and remanded for entry of judgment granting petition.

Oregon statute bars possession of a firearm by an individual who has been convicted of a felony. ORS 166.250(1)(c)(C) ; ORS 166.270.