436 January 23, 2025 No. 41

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

MICHAEL RAY HERTZ,
*Petitioner-Appellant,*

*v.*

CLACKAMAS COUNTY SHERIFF'S OFFICE,
*Defendant-Respondent.*

Clackamas County Circuit Court
23CV04655; A181171

Susie L. Norby, Judge.

Submitted September 13, 2024.

Shawn A. Kollie and Kollie Law, PC filed the brief for appellant.

Scott C. Ciecko and Stephen L. Madkour filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

SHORR, P. J.

Affirmed.

Pagán, J., dissenting.

**SHORR, P. J.**

Petitioner appeals from a judgment denying his petition under ORS 166.274 for relief from a prohibition on possessing or purchasing firearms due to his prior felony conviction. He argues that the trial court erred because he established by clear and convincing evidence that he no longer poses a threat to the safety of the public or to himself. We disagree, and therefore affirm the judgment of the trial court.

We review the record *de novo* to determine whether petitioner proved by clear and convincing evidence that he no longer poses a threat to the safety of the public or to himself. ORS 166.274(7); ORS 166.274(10)(a). Accordingly, "we independently assess and evaluate the evidence and reweigh the facts and reassess the persuasive force of the evidence." *Bentley v. Multnomah County Sheriff's Office*, 297 Or App 609, 610, 443 P3d 743 (2019). At the same time, "we give considerable weight to the findings of the trial judge who had the opportunity to observe the witnesses and their demeanor in evaluating the credibility of their testimony." *Id.*

In 1985, petitioner pleaded guilty to first-degree sexual abuse. That felony conviction barred him from possessing and purchasing firearms. In 2004, he was convicted in a criminal contempt proceeding for failure to pay child support, which was reduced to a misdemeanor.[1] Since then, the record does not show any other arrests or convictions.

In 2023, petitioner petitioned the trial court pursuant to ORS 166.274 for relief from the prohibition on possessing or purchasing firearms. In support of his petition, he attached his own affidavit, a copy of his criminal record, and five letters of support from friends and family. The Clackamas County Sheriff's Office opposed the petition, citing the seriousness of the crime and arguing that petitioner did not meet the high burden of proving he no longer poses a safety threat to himself or others. The sheriff's office

---

[1] Although not mentioned at the hearing, in 1986 petitioner was also convicted of second-degree trespass, ORS 164.245, which is a misdemeanor. Neither the 1986 nor the 2004 misdemeanors on their own barred petitioner from possessing or purchasing firearms under ORS 166.274.

referenced the police reports regarding petitioner's 1985 conviction for sexual abuse, where the victim "describe[d] being awakened to petitioner climbing into her bed, attempting to put his hands inside her underwear, and attempting to coerce her into performing sexual acts on him." Although petitioner claimed the acts were consensual, the victim was legally unable to consent due to her age at the time. The sheriff's office requested that the petition be denied.

In the hearing before the trial court, four witnesses testified: petitioner, his father, his long-time partner, and his stepson. All the witnesses described petitioner as a responsible worker and a family man. Petitioner's father, partner, and stepson all supported petitioner in regaining his firearms rights, and did not believe he would be a danger to society or himself if he were to possess firearms. Petitioner explained that he wants his firearms rights restored so he can go hunting with his family and be able to inherit the family firearms.

When asked about the incident that led to the 1985 conviction, petitioner stated that the victim was his 13-year-old half-sister whom he had recently met. Petitioner testified that he was 17 years old at the time of the incident and 18 years old at the time of conviction. He recounted that they visited in her room one evening, and it "led into some inappropriate touching and rubbing of each other and, and that was it. *** [T]he whole time was maybe 15 or 20 minutes and then, and then I went back to my room and, and that was the whole incident." Petitioner confirmed that following the 1985 arrest, he complied with all of his probation requirements and underwent a psychological evaluation. When asked how he had improved himself from the person who committed the original crime, petitioner stated that he does not do drugs and only drinks on "an occasion like Thanksgiving dinner or Christmas." He said, "I know I don't have a, a temper. You know, I don't have any road rage. *** [F]or the most part I just work and go home."

On cross-examination, petitioner acknowledged that the victim claimed the encounter was not consensual. He stated that, until this petition, he was unaware that the victim's father claimed that, shortly after the incident,

petitioner admitted to having sex with the 13-year-old victim. He also denied additional allegations of sexual abuse involving other victims.

Petitioner's father testified that he has seen improvement in petitioner, explaining that "he pays his bills, doesn't miss work, you know he's good with the grandkids." He explained that he had taken petitioner hunting as a kid, that petitioner "knows how to handle a weapon," and that they would like to be able to go hunting together.

Petitioner's partner testified that they have been in a relationship for the past 25 years, and raised three children together. She confirmed that she has seen growth and improvement in petitioner, but when questioned further, she responded, "He just, I mean definitely more responsible as far as money goes and you know, he just, I don't know it's just, I don't know how to describe it." When asked about his 1985 conviction, she said it "would be hard to believe" that petitioner would reoffend, and she has seen no indication of that behavior reoccurring.

Petitioner's stepson testified that he learned of "the facts or circumstances surrounding [the 1985] conviction" during the hearing. But he stated that nothing he heard changed his opinions or thoughts of petitioner. He said that petitioner has been the father figure in his life and raised him.

In the letters of support, his family and friends described petitioner as nonviolent, honest, and calm, and they expressed no concerns over him owning firearms. A family friend wrote, "I have never witnessed [petitioner] acting aggressively verbally or physically towards anyone." She further stated that her children had spent time at petitioner's home, and she "never felt concerned that there was any reason [she] couldn't trust [her] children in [petitioner's] presence." Another family member described petitioner as "responsible, trustworthy, and honest" with a "laid-back and calm" demeanor.

At closing, the Sheriff's Office reiterated its opposition and noted that although significant time has passed

since petitioner's last conviction, the standard in the statute is not the passage of time.

The trial court denied petitioner's petition. The court explained:

> "The statutory language contains an implicit presumption that, at the time the person's right to possess firearms was taken away, the person clearly posed a safety threat to himself or others. To prove that is no longer true, at a bare minimum, the person must acknowledge the safety threat that he posed and convey credible remorse. The person must demonstrate an understanding of the reasons the prohibition was imposed and must clearly and convincingly demonstrate that he is reformed, so that the reasons no longer exist."

In making its decision, the court focused on petitioner's testimony, in which he minimized the sexual offense and denied all other information collected by the state in the investigation of that crime. The court concluded that petitioner did not meet "the high burden of proof," because in "the absence of an acknowledgement of the seriousness of his original crime and the circumstances that surrounded it, it is not possible to convincingly attest that a meaningful reformation ever took place."

On appeal, petitioner argues that in denying his petition, the trial court added additional requirements of showing remorse and reformation inconsistent with the legal standard. ORS 166.274 contains no express requirement of remorse or reformation. The statute simply states that a petition "shall be granted when the petitioner demonstrates, by clear and convincing evidence, that the petitioner does not pose a threat to the safety of the public or the petitioner." ORS 166.274(7). But in determining whether a petitioner has met the statutory standard, we have considered remorse among the relevant factors for determining a petitioner's threat to others. *Bentley*, 297 Or App at 615-16. We have considered the following factors: (1) the length of time since the crime occurred, (2) whether the petitioner fully completed all probation or parole obligations related to the conviction, (3) whether the petitioner shows remorse, (4) any subsequent arrests or convictions, (5) the testimony of others,

including the petitioner's family and friends, and (6) the petitioner's reason for seeking restoration of gun rights. *See id.* (concluding that the petitioner met the standard for reinstatement based on the aforementioned reasons); *see also Newman v. Marion County Sheriff's Office*, 328 Or App 686, 687, 538 P3d 895 (2023) (restoring gun rights to a petitioner with a more than 30-year-old bank robbery conviction who had no further convictions since that time). We do not read *Bentley* to limit our consideration to those factors. As a general rule, we do not apply those types of factors mechanically, but rather consider the totality of the circumstances to determine whether a petitioner has met the standard. *Dept. of Human Services v. J. M.-A.*, 333 Or App 334, 341, 554 P3d 263 (2024) (considering "the totality of [the] * * * circumstances" to determine whether, on *de novo* review, the Department of Human Services met its burden of proof by clear and convincing evidence).

   *Bentley* provides helpful guidance. In *Bentley*, the petitioner's crimes occurred 20 years earlier, he fully served his time, complied with all release obligations, had led an upstanding life since then, and had the support of his family and friends. *Bentley*, 297 Or App at 615. Those facts parallel the facts in appellant's case. But *Bentley* diverges from this case in significant ways. The petitioner in *Bentley* had committed a series of unarmed robberies, but "felt awful," "knew what [he] was doing was wrong," and "turned himself in to the police" on the day of his last robbery. *Id.* at 612 (internal quotation marks omitted). The petitioner stated that he regretted his prior actions every day and wished he could take it back. *Id.* at 612. All other witnesses at the hearing similarly testified that the petitioner was remorseful about his crime. *Id.* at 611. In its decision, the trial "court did not make specific findings of fact nor any express statements about the credibility of petitioner or the other witnesses." *Id.* at 615. We found that the petitioner "established that he does not now pose a threat to the safety of the public or to himself." *Id.* at 616.

   Turning back to this case, we undertake *de novo* review. Considering the *Bentley* factors under the totality of the circumstances, we find that petitioner has not met the

high bar for clear and convincing evidence set forth in the statute. We have said that "[c]lear and convincing evidence is evidence that is free from confusion, fully intelligible, distinct and which establishes that the truth of the asserted fact is highly probable." *Shields v. Villareal*, 177 Or App 687, 694, 33 P3d 1032 (2001) (internal quotation marks omitted). We apply that standard here and find that petitioner did not demonstrate by such evidence that it is highly probable under ORS 166.274(7) that petitioner "does not pose a threat to the safety of the public."

We acknowledge that several of the factors weigh in petitioner's favor. Substantial time has passed since petitioner's last offense. He complied with all probation requirements. Over the past two decades, petitioner has had no arrests or convictions for any crime. His reason for seeking restoration of his firearms rights is to facilitate his involvement with his family in target shooting and hunting.

But some of the factors cut against petitioner. Although his family and friends supported the reinstatement of his firearms rights, the witnesses, including petitioner, were unable to meaningfully articulate how petitioner has changed from the person who committed the felony resulting in the loss of those rights. Witness statements that petitioner is "responsible as far as money goes" and "doesn't miss work" do not sufficiently demonstrate that petitioner is no longer a threat to society. Moreover, petitioner shows no remorse for his crime that might demonstrate his change in outlook or risk to society since the offense. Nor does he appear to recognize the seriousness or wrongfulness of his offense. He describes the incident leading to his felony conviction as a 15-20 minute consensual encounter, despite the fact that the victim denied consent and legally could not consent. His inability to describe the scope of his past criminal conduct raises legitimate questions about whether he may continue to pose a threat to society.

We acknowledge that petitioner was 17-years old at the time of the felony offense and, as noted, considerable time has passed since that offense during which time petitioner has not committed further felonies or any violent

crimes.[2] Those are significant factors supporting the petition. However, petitioner has the burden to establish on this record that it is highly probable that he no longer poses "a threat to the safety of the public or the petitioner." ORS 166.274(7). Considering the entire record before us and undertaking *de novo* review, we are unable to find by clear and convincing evidence that petitioner no longer poses a threat to others.[3] He has not presented clear and convincing evidence that demonstrates how he has changed since the original offense such that it is highly probable that he no longer poses the threat to others that he once did.

We turn briefly to the well-stated dissent to make a few observations. We do not disagree with the concept that actions speak louder than words or that expressions of remorse may be subjective or insincere—although fact finders are regularly asked to make credibility determinations and decide if testimony is sincere. Regardless, this case is not just about the fact that petitioner expressed no remorse but also that petitioner and his witnesses provided no meaningful explanation of how he had changed since he committed the crime. Indeed, there was no acknowledgement in this record that petitioner had acted wrongfully or indication of what had substantively changed in petitioner from that point. We also agree with the dissent that nearly forty years is a very long time to be free of any felony crimes. But, as noted above, the legislature did not make the mere passage of time—even a very long time—sufficient to restore petitioner's right to obtain firearms. That is a policy choice for the legislature. Instead, it put petitioner to the high burden of proving by clear and convincing evidence that "petitioner does not pose a threat to the safety of the public or the petitioner." ORS 166.274(7). Petitioner may be able to carry his burden by clear and convincing evidence based on a different record than the one before us. However, on *de novo* review, we are not persuaded on this limited record that petitioner

---

[2] Petitioner testified that he was a juvenile at the time of the felony offense. The state's answer to the petition contended that he was an 18-year-old adult. The record does not clearly indicate whether he was charged as a juvenile or an adult.

[3] We need not decide whether petitioner established by clear and convincing evidence that he no longer poses a threat to himself. We note that that did not appear to be the focus of the dispute before the trial court or on appeal.

has met that high burden. We affirm the trial court's denial of the petition.[4]

Affirmed.

**PAGÁN, J.,** dissenting.

The saying "actions speak louder than words" applies particularly to recidivism. Given the time and opportunity, one could craft quite the convincing statement of remorse and reflection, tailored specifically to one's audience, with a thrust of emotion delivered in such a way to ensure that the one who hears it truly believes one regrets a choice they made in their past. But time tells us the truth about people's intentions, and 40 years is a very long time to be making choices. The written materials and the evidence at the hearing in this case showed that petitioner demonstrated by clear and convincing evidence that he is not likely to reoffend or hurt himself or the public. I find the majority's focus on petitioner's supposed lack of remorse concerning, because remorse is a vague, ill-defined concept that is inherently tied to emotion and is capable of manipulation. Instead, I would focus on the near half-century petitioner has lived without violence. I would find that petitioner met his burden, and I therefore dissent.

Oregon law provides a mechanism, a second chance, for a person barred from possessing or receiving a firearm to petition a trial court to lift that ban. Under that law, "a person barred from possessing or receiving a firearm may file a petition for relief from the bar * * * in the circuit court in the petitioner's county of residence." ORS 166.274(1), (2). The statute requires the trial court to order relief if the petitioner "demonstrates, by clear and convincing evidence, that the petitioner does not pose a threat to the safety of the public or the petitioner." ORS 166.274(7) (stating that "relief shall be granted").

---

[4] We also do not perceive any Fifth Amendment or constitutional issues from a statutory standard that requires that a petitioner acknowledge how they have changed since their past crime, particularly in these circumstances, to restore their firearm rights. Petitioner pleaded guilty to the prior crime and faces no further criminal liability in acknowledging any prior wrongdoing or explaining how he has changed since that time.

The majority has concluded that petitioner has not established by clear and convincing evidence that he no longer poses a threat to others. In reaching that decision, the majority relies on *Bentley v. Multnomah County Sheriff's Office*, 297 Or App 609, 443 P3d 743 (2019). In *Bentley,* we considered numerous factors in determining whether the petitioner had met the statutory standard under ORS 166.274(7). *Id.* at 615-16. Those factors included: (1) the time elapsed since the crime was committed, (2) whether the petitioner had fulfilled all probation or parole requirements, (3) whether the petitioner demonstrated remorse, (4) any subsequent arrests or convictions, (5) testimony from others, and (6) the petitioner's justification for seeking restoration of gun rights. *Id.*

Despite the multitude of above factors, in this case both the trial court and the majority have assigned a disproportionate amount of weight to the assertion that petitioner's testimony did not convey credible remorse. According to the majority:

"[P]etitioner shows no remorse for his crime that might demonstrate his change in outlook or risk to society since the offense. Nor does he appear to recognize the seriousness or wrongfulness of his offense. *** His inability to describe the scope of his past criminal conduct raises legitimate questions about whether he may continue to pose a threat to society."

337 Or App at 442. Because of this lack of remorse, the majority has concluded that petitioner did not meet the bar for clear and convincing evidence. However, I find this emphasis on remorse concerning and insufficient, as it relies on an emotional evaluation and excludes the other factors that can be more objectively assessed.

By requiring petitioner to make a showing of remorse, we place an inordinate amount of weight on a concept that lacks clarity in its definition and uniformity in the characteristics that signal its presence or absence. Like all assessments of character, remorse is difficult to gauge and is susceptible to manipulation. That is particularly true in a setting such as a hearing, where petitioners appear before a judge in a highly formalized, stylized environment. Findings of fact, whether made by a judge or

jury, are always difficult, and remorse is perhaps even more intractable insofar as it is entirely an internal phenomenon which may not be amenable to refutation by countervailing external evidence. If remorse is a feeling, how can one prove that a petitioner is—or is not—feeling the way the petitioner claims? The result creates a situation, divorced from factual determination, that encourages petitioners and their counsel to undergo a creative exercise in articulating the petitioner's regret in a way that demonstrates sufficient recognition of wrongdoing. However, after an extended period of time—in this case almost 40 years—I question whether it is reasonable to expect petitioners to be able to demonstrate human emotion in a way that shows that they have continued to engage in emotional suffering for their choices.

Further, there is an interplay between constitutional issues and common sense that arises when remorse is heavily relied upon. Although presented in the context of sentencing, in *Brown v. State*, 113 Nev 275, 283, 934 P2d 235 (1997), the Nevada Supreme Court confronted a situation where the defendant had persistently declared his innocence, not only at trial, but also at sentencing after the jury found him guilty of the offense. The sentencing judge found the defendant's professions of innocence to be evidence of a lack of remorse and sentenced the defendant to the statutory maximum. *Id.* The Nevada Supreme Court overturned the sentence, concluding that the factor of remorse was improperly relied upon. *Id.* at 291. The court noted:

> "The Fifth Amendment states that no person 'shall be compelled in any criminal case to be a witness against himself.' The district court violated [the defendant's] Fifth Amendment rights by considering his 'lack of remorse' when he still had a constitutional right to maintain his innocence and by threatening to impose a harsher sentence if [the defendant] refused to admit his guilt. [The defendant] was unable to express remorse sufficient to satisfy the judge without foregoing his right to not incriminate himself, and the fact that he took the stand at trial does not change this analysis because [the defendant] maintained his innocence. As such, requiring [the defendant] to either express remorse or receive a harsher sentence violated [the defendant]'s Fifth Amendment rights and constituted an abuse of discretion.

*Id.* at 291. Thus, because of the inherent difficulty in assessing remorse and the constitutional concerns it raises, I would instead focus my attention on the more objective factors that were considered in *Bentley*. *See* 297 Or App at 615-16 (factors considered included: the time elapsed since the crime was committed, petitioner's fulfillment of all probation or parole requirements, subsequent arrests or convictions, testimony from witnesses, and the petitioner's justification for seeking restoration of gun rights).

Here, petitioner committed one felony crime as a 17-year-old, where he entered the bedroom of his 13-year-old half-sister and engaged in inappropriate touching. Petitioner entered a guilty plea to first-degree sexual abuse and was sentenced to a period of probationary conditions. He served almost no jail time, underwent psychological evaluation, and complied with all of his probation requirements. The incident at issue occurred nearly 40 years ago, and other than a conviction for a misdemeanor child support matter in 2004, petitioner has received no additional convictions. He has lived a peaceful life for many years and testified that he seeks to use a firearm for a specific purpose: to go hunting with his children and grandchildren. I would conclude that the trial court erred in denying the petition, because petitioner, through his own testimony, and the testimony of three witnesses who have known him for decades, demonstrated that he is not likely to reoffend. Petitioner's showing was sufficient.

Respectfully, I dissent.